ROBERT L. GREGORY et al. v. KANSAS CITY et al., Appellants.

**In Banc, July 2, 1912.**

1. **APPEAL: Several Appellants: Separate Docket Fee and Separate Bill.** When several defendants appeal from the same judgment, neither the law nor the rules of the court require each appellant to pay a separate docket fee, or to file a separate bill of exceptions or a separate abstract of the record. So that where the bill of exceptions and abstract filed are acceptable to all appellants and are not objected to by respondents before the cause is submitted, there is no reason why one appellant may not rely upon such bill and abstract to sustain his appeal after other appellants have abandoned the appeal; nor is it of any importance who paid the docket fee.

2. ———: **Bond.** An appeal bond is not a necessary prerequisite to the right of appeal.

3. ——: Dismissal of Action by Respondent. Where the defendants, after judgment against them, have appealed and the cause has been briefed and argued by both sides and submitted to the court, and it appears that if it is dismissed the same issues may soon be brought up in another form, the plaintiffs will not be permitted to dismiss the action.

4. KANSAS CITY: Charter: Classified Employees: Waterworks. Section 15 of article 15 of the charter of Kansas City of 1908 vacated all positions then held by employees of the city whose positions come within the "competitive class of classified civil service;" and elsewhere the charter placed in that class the chief clerk of the waterworks department, the superintendent for the meter division, the off-and-on clerk, the permit clerk in the superintendent's department, the clerk to the auditor, etc.

5. —— :——: ——: Sec. 1176; Repealed by New Charter. Section 1176, Revised Ordinances of Kansas City of 1898, placing the employees of the waterworks department under civil service classification and providing for their suspension only for cause and reinstatement after a hearing, was repealed by the new charter adopted in 1908, since the whole subject-matter of that ordinance was revised by the new charter, and that amounted to a repeal by implication

6. ——: ——: Vested Interest in Official Position. No one can acquire a vested right in an office or position created by the legislative department of a city. The employees of the waterworks department of Kansas City, who were appointed under the civil service provisions of section 1176 of the Revised Ordinances of 1898, which was repealed by the new charter of 1908, did not acquire such contractural relations with the city that they could not be removed or their offices or positions vacated by the adoption of the new charter.

7. ——: ——: Constitutionality of Civil Service Provisions: Legislative Power. The power granted to the civil service commissioners by the provisions of the charter of Kansas City, to prepare and promulgate rules for conducting the examinations of applicants for appointment in the competitive class of the classified civil service, does not confer upon said commission legislative powers, and those provisions are not therefore violative of section 17 of article 9 of the Constitution which provides that cities adopting special charters must have a mayor and "two houses of legislation." Legislative bodies (or the people by their charter) have the right to confer on executive boards authority to prescribe rules for putting in force the powers and duties conferred on such boards.

8. ———: ———: Change in Administration: Right to Ignore Charter. It is not within the discretion of executive officers of Kansas City to set aside its charter and administer the affairs of the city pursuant to ordinances which have been repealed and which, without the new charter repealing them, would have continued certain classified employees of the waterworks department in official position. Nor does a very large majority vote given to such executive officers at a recent election authorize them to ignore the charter provisions in reference to classified civil service employees, nor can it be held that the voters intended to repeal the charter provisions by electing men unfriendly to their enforcement.

9. ———: ———: Wisdom of Civil Service Provisions. It is not for the courts nor for any executive officer of the city to decide upon the wisdom or impracticability of those provisions of the charter of Kansas City, adopted in a constitutional way by the qualified voters thereof, that place many of the appointees of the city upon a competitive civil service basis.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED.

*John G. Park, A. F. Smith, Elijah Robinson* and *Haff, Meservey, German & Michaels* for appellants.

(1)  Plaintiffs' petition fails to state facts sufficient to constitute a cause of action, and the evidence shows that plaintiffs are not entitled to any relief. (a)  Sec. 1176 of the Revised Ordinances of 1898, on which plaintiffs base their action, is invalid because its provisions limiting the power of the appointing officers to discharge their employees at will are inconsistent with the provisions of Sections 1 and 7 Article 13 of the charter of 1889, which do not limit that power. State ex rel. v. Johnson, 123 Mo. 43; Abrams v. Horton, 18 N. Y. App. Div. 208; Wright v. Gamble, 136 Ga. 376.  (b)  Sec. 1176 provides a method for hiring and discharging employees in the water department of the city; Art. 15 of the charter of 1908 provides a method of  hiring and discharging employees in all

departments of the city. The charter of 1908 repeals the ordinance of 1898. The question of repeal is always one of legislative intent. 26 Am. & Eng. Ency. Law, 720; Grimes v. Reynolds, 184 Mo. 679; Hamilton v. Rathbone, 175 U. S. 414. A later statute repugnant to a former one, or covering the whole subject-matter covered by a former one, is a repeal thereof. Grimes v. Reynolds, 184 Mo. 679; Hamilton v. Rathbone, 175 U. S. 149; Sutherland on Stat. Constr., sec. 252; In re Baker, 2 H. & N. 219; Bride v. McFarland, 18 App. Cas. 120; District v. Hutton, 143 U. S. 18; Camden v. Varney, 63 N. J. L. 325; Thornton v. State, 5 Ga. App. 397; Bradley v. Muzzy, 54 Wash. 227; Grant v. Railroad, 66 W. Va. 175; People ex rel. v. Loeffler, 175 Ill. 585; Smith v. State, 14 Mo. 147; Grimm v. Jones, 115 Mo. App. 597; State v. Crane, 202 Mo. 54; Hudson v. Wright, 204 Mo. 412; State ex rel. v. Shields, 230 Mo. 91. An ordinance, if in conflict with a charter subsequently adopted, is repealed. Quinette v. St. Louis, 76 Mo. 402. Sec. 1, Art. 18 of the charter of 1908 does not save from repeal the provisions of Sec. 1176, Revised Ordinances 1898. Where a board is abolished, in the absence of any saving clause in the new law, its employees are discharged, and if re-employed, it must be by a new authority. Fox v. McDonald, 101 Ala. 51; State ex rel. v. Board, 7 Neb. 42; 2 McQuillen, Mun. Corp., sec. 494. The provisions of section 1176 were also repealed by subsequent ordinances. Sec. 1071, R. O. 1910; ordinance 10883, approved November 17, 1898. (c) Plaintiffs did not have such a vested interest in the continued existence of the provisions of Sec. 1176 that its repeal would constitute a violation of Sec. 15, Art. 11 of the State Constitution, or Sec. 10, Art. 2 of the Constitution of the United States prohibiting the enactment of a law impairing the obligation of a contract. The purpose of Sec. 1176 was to create a rule of public policy. No individual has a proprietary right in a rule of pub-

lic policy. Bushnell v. Loomis, 234 Mo. 371; Mondou v. N. Y., etc. Co., 32 S. C. R. 169. The effect of the provisions of Sec. 1176 was to grant an appeal from the order of an appointing officer discharging any of his employees. No individual has such a proprietary right in a law granting appeals that such law cannot be repealed. State v. Slevin, 16 Mo. App. 541; Cooley's Const. Lim., p. 548; Railroad v. Grant, 98 U. S. 398; Gwin v. U. S., 184 U. S. 669; Isenberg v. Selvage, 103 Ky. 260; Rupert v. Martz, 116 Ind. 78. An officer has no vested right to his office. The government may change the duties of that office or abolish it altogether, without violating any of the officer's rights. 23 Am. & Eng. Ency. Law, 328; City v. Drennon, 46 Mich. 478; Butler v. Pennsylvania, 10 How. 402; People v. Brown, 83 Ill. 95; Butcher v. Camden, 29 N. J. Eq. 478; Hoboken v. Gear, 3 Dutch. (N. J.) 261; Council v. Sweeney, 44 Ga. 463; State ex rel. v. Davis, 44 Mo. 129; State ex inf. v. Evans, 166 Mo. 356; State ex rel. v. Ellington, 134 N. C. 131; Newton v. Comm'rs, 100 U. S. 559; Crenshaw v. United States, 134 U. S. 99; Primm v. Carondelet, 23 Mo. 22. The rule as to officers applies with equal force in cases affecting employees. Langdon v. New York, 92 N. Y. 427; Phillips v. New York, 88 N. Y. 245; People v. Adams, 51 Hun, 583; People ex rel. v. Judges, 56 Hun, 643; McCann v. New York, 166 N. Y. 587; Fox v. McDonald, 101 Ala. 51; People ex rel. v. Sweeney, 43 App. Div. 444; People v. City, 149 N. Y. 225; State ex rel. v. Edwards, 40 Mont. 287; Donaghy v. Macey, 176 Mass. 178; Venable v. Board, 40 Ore. 458; Frankfort v. Brawner, 100 Ky. 66; Moores v. State, 54 Neb. 486; Heath v. Salt Lake, 16 Utah, 374; Fitzsimmons v. O'Neill, 214 Ill. 494; Sutliffe v. City, 132 App. Div. 831; Chicago v. People, 114 Ill. App. 145; Bock v. New York, 64 N. Y. Supp. 777; People v. Bingham, 196 N. Y. 519; Wilcox v. Rodman, 46 Mo. 332; State ex rel. v. Ford, 41 Mo. App. 122; Magner v. St. Louis, 179 Mo. 495.

There is a clear distinction between a case where one has a contract with the government, and a case where one's employment is merely authorized by law. Hall v. Wisconsin, 103 U. S. 5; Head v. University, 19 Wall. 526. Laws granting pensions to employees may be repealed without impairing any legal right of such employees. People ex rel. Devery v. Coler, 173 N. Y. 103; State ex rel. v. Board, 121 Wis. 44; Friel v. McAdoo, 181 N. Y. 558; People v. Peck, 73 App. Div. 89; McFarland v. Bieber, 32 App. Div. (D. C.) 513; Pennie v. Reis, 132 U. S. 464. Laws changing the rules of liability in master and servant cases do not impair contractual rights of employer or employee. Pittsburg Co. v. Lightheiser, 163 Ind. 247; Mondou v. N. Y. Co., 32 S. C. R. 169. A contract which would permit the employee to quit at his pleasure and not permit the government to discharge him at its pleasure would be a unilateral contract and uninforcible. 2 Pomeroy, Eq. Jur., sec. 769; Marble Co. v. Ripley, 77 U. S. 359; Pub. Co. v. Tel. Co., 83 Ala. 498; Alworth v. Seymour, 42 Minn. 526; 1 Page on Contracts, sec. 304; Railroad v. Mathews, 64 Ark. 398. A contract with Kansas City would have been illegal in the absence of an appropriation setting aside the amount for which Kansas City would be liable under said contract. Charter of Kansas City of 1889, art. 4, sec. 30; 2 Dillon, Mun. Corp. (5 Ed.), sec. 790; Indianapolis v. Wann, 144 Ind. 175. (2) By accepting benefits accruing to them under and by virtue of the charter of 1908 and proceedings and ordinances based thereon, the plaintiffs have waived their rights (if any they had) to make any claim under an ordinance passed before the adoption of said charter. (a) Positions created under authority of the charter of 1889 died with the adoption of the charter of 1908, except as saved by the provisions of said charter of 1908. In remaining in the service after August 4, 1908, plaintiffs held their positions by virtue of the charter of

1908. Fox v. McDonald, 101 Ala. 51; State ex rel. v. Board, 7 Neb. 42; 2 McQuillen, Mun. Corp., sec. 494. (b) Most of the plaintiffs participated in the civil service examinations for the positions claimed by them, and thereby waived their right to question the applicability of the civil service provisions of the charter to those positions. (c) After the adoption of the charter of 1908, plaintiffs' pay was increased, and in some instances their positions were changed. Having accepted the benefits of changes made by virtue of the new law, they must abide by all of the provisions of that law. State ex rel. v. Hawes, 177 Mo. 360. Any employee who seeks the aid of a court for the violation, or threatened violation, of some right conferred by ordinance, must allege and prove the ordinance on which that right is based. State ex rel. v. Oddle, 42 Mo. 214; Keane v. Klausman, 21 Mo. App. 489; Givens v. Van Studdiford, 86 Mo. 159; Mooney v. Kennett, 19 Mo. 552; Bailey v. Kansas City, 189 Mo. 514; Bragg v. Met., 192 Mo. 350; McHugh v. Transit Co., 190 Mo. 93; 28 Cyc. 393; Stott v. Chicago, 205 Ill. 281. Where a contract has been modified, it must be sued on and proved as modified. Larits v. King, 93 Mo. 519; Sutton v. Raeder, 147 Mo. 309; Harrington v. Brockman, 107 Mo. App. 423; Breicheisen v. Coffey, 15 Mo. App. 84; Taussig v. Mill, 124 Mo. App. 220; Mfg. Co. v. School District, 54 Mo. App. 376; Koons v. Car Co., 203 Mo. 260; Wilson v. Russler, 91 Mo. App. 280; Cannon Co. v. Boswell, 117 Mo. App. 473; Zinc Co. v. Assur. Corp., 125 Mo. App. 41; Reilly v. Mayor, 48 N. Y. Sup. Ct. 274. (3) Article 15 of the charter of 1908 is not unconstitutional on the ground that it confers legislative powers on the board of civil service when it authorizes that board to adopt rules for carrying out the civil service provisions of the charter. (a) This case presents no issue affected by the rules of the board of civil service. Jaicks v. Mer-

244 Mo. Sup.—34

rill, 201 Mo. 91. (b) Civil service laws universally contain provisions authorizing the adoption of rules, and they are always upheld. Sec. 2, Fed. Civil Service Act of January 16, 1883 (1 Fed. Sta. Ann., 9, 809); Butler v. White, 83 Fed. 578; White v. Berry, 171 U. S. 366; Sec. 9, Civil Service Law of N. Y. (R. S. N. Y. 1901, p. 499); Rogers v. Council, 123 N. Y. 187; People v. Cramm, 61 N. Y. Supp. 858; Sec. 6, ch. 19, R. S. Mass. 1902; Opinion of Justices, 138 Mass. 601; Sec. 4, ch. 24a, R. S. Ill. 1908; People v. Kipley, 171 Ill. 44; Kipley v. Luthardt, 178 Ill. 535; People v. Chicago, 234 Ill. 416; State ex rel. Buell v. Frear, 146 Wis. 291. (c) Statutes authorizing medical and dental examining boards to adopt rules are universally upheld. 2 Dillon, Mun. Corp. (5 Ed.), sec. 574; Ex parte McManus, 151 Cal. 331; In re Thompson, 36 Wash. 377; Butterfield v. Stranahan, 192 U. S. 470; State v. Hathaway, 115 Mo. 47; State v. Doerring, 194 Mo. 398; State ex rel. v. Wells, 210 Mo. 601. (4) The civil service provisions of the charter are self-enforcing. Sharp v. Biscuit Co., 179 Mo. 553; State ex inf. v. Kansas City, 233 Mo. 162. (5) The civil service provisions of the charter are not affected by the existence of Sec. 9764, R. S. 1909. (a) Kansas City is governed by its charter and not by a statute. State ex rel. v. Field, 99 Mo. 352. (b) Sec. 9764 is a part of a statute creating a board of police and has no application to this case. State ex rel. v. Commissioners, 184 Mo. 109.

*C. B. Leavel, L. H. Waters* and *Oscar Hochland* for respondents.

(1) The civil service ordinance, sec. 1176, was based on merit, and no person obtained a position under it until by a six months' probation he gave the best possible evidence of his fitness for the place, and is not inconsistent with the civil service provisions of

art. 15 of the charter, and therefore has not been re-
pealed. A statute or ordinance can only be repealed
by an express provision or by necessary implication.
State v. Walbridge, 119 Mo. 389; Railroad v. County,
53 Mo. 17; State v. Dalton, 134 Mo. App. 525. As in
this case, there is no express repeal of Sec. 1176 and
it is now in force if by any fair interpretation that sec-
tion and the provisions of the civil service article of
the charter can stand together. State v. Wells, 210
Mo. 620; McVey v. McVey, 51 Mo. 406. The ordinance
(Sec. 1176) was applicable to a single department of
the city service and in that respect was a special law
or ordinance, and the civil service article does not re-
peal that ordinance unless words negativing the con-
tinuance of that ordinance are found in art. 15, or the
two acts are irreconcilable. Railroad v. Shambaugh,
106 Mo. 557; State ex rel. v. Convent, 116 Mo. 575;
State v. Severance, 55 Mo. 378. A special local law
on one topic is not repealed by a later general law
unless that intent is manifest. State v. Hodges, 214
Mo. 376; State ex rel. v. Board, 131 Mo. 505. The evi-
dent purpose of Sec. 1176 was to provide a civil serv-
ice, based on merit, so far as the water department
was concerned. That is all art. 15 pretends to do, and
it exempts from its operation, in words or in effect,
the exempt list, the fire department and any person
deemed by the civil service commissioners to be spe-
cially qualified. 23 Am. & Eng. Ency. Law (1 Ed.), p.
473. Statutes may be expressly repealed by or im-
plication; but implied repeals are not favored. 23 Am.
& Eng. Ency. Law (1 Ed.) 489; State v. Jaeger, 63
Mo. 403; Railroad v. County, 53 Mo. 17; State v.
Bishop, 41 Mo. 16; State v. County, 41 Mo. 453; State
v. Severance, 55 Mo. 378. As laws are presumed to be
passed with deliberation and with full knowledge of
all existing ones on the subject, it is but reasonable
to conclude that in passing a statute it was not intended
to interfere with or abrogate any former law relating

to the same matter unless the repugnancy between the two is not only irreconcilable but also clear and convincing, and following necessarily from the language used, unless the later act fully embraces the subject-matter of the earlier, or unless the reason for the earlier act is beyond peradventure removed. Hence, every effort must be used to make all acts stand, and if by any reasonable construction they can be reconciled, the late act will not operate as a repeal of the earlier. State v. Bishop, 41 Mo. 16; State v. County, 41 Mo. 453. A clause in a statute purporting to repeal other statutes is subject to the same rules of interpretation as other enactments. Smith v. People, 47 N. Y. 341. On the question whether the repeal of a prior statute, absolute in terms, can be limited in its operation and effect for any reason, the rule seems to be that the language of the repealing clause must be accepted as the expression of the will of the Legislature and effect given to it according to its terms. Smith v. People, 47 N. Y. 341; Rex v. Rogers, 10 East. 473; Warren v. Windle, 3 East. 205. It is now axiomatic that a repeal by implication is not favored and the settled rule of construction in this State is that prior laws are to be upheld if the second, act can subsist thereto. McVey v. McVey, 51 Mo. 406; State ex rel. v. Slover, 134 Mo. 10; State v. County, 41 Mo. 453; State v. Fiala, 47 Mo. 310; Glasgow v. Lindel, 50 Mo. 60; Manker v. Follock, 91 Mo. 430; State v. Dailey, 49 Mo. App. 184. A legislative attempt to repeal by a subsequent act will not be assumed if any other construction can be given to the subsequent act; to supplant a previous one, a subsequent statute must be clearly repugnant. State v. Draper, 47 Mo. 29. The doctrine that repeals by implication are not favored is applicable where an effort is made to repeal a special provision of a general statute by implication. State v. DeBar, 58 Mo. 395. Repeals by implication of special provisions are everywhere discountenanced.

State v. Kessels, 120 Mo. App. 233; Yall v. Gillham, 187 Mo. 393; Charter 1908, p. 853, art. 8, "Miscellaneous Ordinances," sec. 1071; art. 10, secs. 4-5, p. 361; art. 13, sec. 3, p. 401. The above sections of the charter of 1908 ·expressly exempt from the operation of the civil service section of such charter positions other than those designated in said section 4 of· article 15 and therefore, it was clearly not the intention of the framers of the charter to repeal ordinance 1176. State ex rel. v. Lucas, 236 Mo. 30. (2) If plaintiffs acquired a right to their respective positions under section 1176, the provisions of article 15 do not destroy that right. Sec. 9710, R. S. 1909. These plaintiffs are not officers; they are mere clerks, mere employees, who have held their positions for years. State ex rel. v. Lucas, 236 Mo. 30; State ex rel. v. Gray, 91 Mo. App. 441. Plaintiffs were at work for the city under a contract of employment. They submitted to the requirements of section 1176 and held their positions by virtue of that ordinance. State ex rel. v. Commissioners, 184 Mo. 131; State ex rel. v. Kent, 98 Mo. App. 281. Hence, if Sec. 1176 has not been repealed, either expressly or by implication, as we claim it has not been, there can be no question that the plaintiffs have a right to hold their positions under the terms of ordinance 1176 and the contract thereby entered into between the city and these employees. Railroad v. Springfield, 85 Mo. 674; State ex rel. v. Kent, 98 Mo. App. 281; Booth v. Fulton, 85 Mo. App. 16; Houseman v. Water Co., 119 Mo. 313. Sec. 9710, Charter and Ordinances, Kansas City, 1908, p. 78 (the same being Sec. 9710, R. S. 1909), provides that such charter, in superseding any previous charter and amendments thereof, shall not effect any right, lien or any liability accrued, established or subsisting previous to the time such charter takes effect. This is the enabling act which permits this city to make its charter and is restricted in accordance with Sec. 1176. (3) The civil

service article of the charter and its provisions are not in harmony with the Constitution and laws of the State. The constitutionality of a law is not determined by its mere form, but by its operation. State v. Anslinger, 171 Mo. 600. The article authorizes the appointment of a board of civil service commissioners and authorizes them to make and enforce rules for the classification of the officers and employments in the classified service of the city and for appointments and promotions therein, and they may amend or repeal them. Subject to the charter and these rules, they shall make regulations for and have control of examinations and registrations for the service of the city. While these rules are subject to the inspection of the mayor and city comptroller, the mayor cannot veto or disapprove them, nor can the common council either amend or repeal them. These rules have the force and effect of ordinances. Charter, art. 15, sec. 2. The Constitution provided that "it shall be a feature of all such charters that they shall provide . . . for a mayor or chief magistrate and two houses of legislation." Constitution, art. 9, sec. 17; Charter, art. 3, sec. 2, par. 1; art. 15, sec. 2; art. 15, sec. 11. Under Sec. 32, art. 15, the common council can pass no ordinance touching the civil service unless recommended and certified in writing by the commissioners. (4) The authorities cited on unilateral agreements have no application. The plaintiffs have been employed for years and have been regularly paid and no attempt has been made to remove them, under section 1176. Giles v. Bradley, 2 Johns. Cas. 253; Mason v. Payne, 47 Mo. 517; Kirkpatick v. Bonsall, 72 Pa. St. 155.

BROWN, J.—The general object of this action is to determine the constitutionality and legal effect of article 15 of the charter of Kansas City, Missouri, adopted by the voters of that city in the year 1908,

Gregory v. Kansas City.

which article purports to place the appointment, tenure of office and removal of certain appointees of that city under a system of competitive civil service. Plaintiffs had judgment below, from which all of the defendants appeal.

On March 1, 1912, the appeals in this case and the case of Folk et al. v. Kansas City et al., reported at page 553 of this report, were advanced and set for hearing at our April term, and were heard orally and submitted for our determination on April 13, 1912. The issues in the case of Folk et al. v. Kansas City et al., involve a construction of the same municipal laws as the case at bar, and were tried below and upon appeal as one action.

These appeals were advanced and heard upon joint suggestions of appellants and respondents, in which said joint suggestions it was urged that said appeals involved matters of great public interest to the people of Kansas City.

On May 11, 1912, on motion of the attorneys for respondents and the attorney for part of the appellants, the submissions in both cases were set aside and the appeals dismissed.

On May 21, 1912, L. M. Luth, and certain other appellants who did not consent to the dismissal of their appeals in this case, moved this court to set aside its order of dismissal and reinstate the appeal and submission.

While resisting the reinstatement of the appeal and submission in this case, the respondents demand that if the appeal in this case be reinstated, then the appeal in the case of Folk et al. v. Kansas City et al., shall likewise be reinstated.

In their suggestions in opposition to the reinstatement of the appeal in this case, respondents urge that appellants Luth et al. have not perfected their appeal by filing certified copy of judgment and order granting appeal, and that they have failed to pay the docket

fee in this court, and have failed to file an abstract of the record and an appeal bond, as required by law.

Upon a consideration of these suggestions, we find that the copy of the order granting the appeals in this case embraces the separate appeal granted to defendants Luth et al. as well as the appeal granted to other defendants. The record does not show by whom the docket fee was paid, nor do we deem it a matter of importance by whom such fee was paid.

When several defendants appeal from the same judgment (as in this case) neither the law nor the rules of this court require each appellant to pay a separate docket fee, file a separate bill of exceptions or a separate abstract of the record.

When, as in this case, the bill of exceptions and abstract filed are acceptable to all appellants and are not objected to by respondents before the appeal is submitted, there is no reason why one appellant may not rely upon such bill of exceptions and abstract to sustain his appeal after other appellants have abandoned the same.

To require a separate bill of exceptions or separate abstract of the record or separate docket fee from every defendant who appeals separately or jointly with other losing defendants, would cast upon this court the duty of examining duplicate records, and also place upon the appellants needless expense; therefore, we will not require such vain and useless things to be done. These views find support in the case of Badger Lumber Company v. Stepp, 157 Mo. 366, l. c. 377.

It is true that appellants Luth et al. have filed no appeal bond, but such bond is not a necessary prerequisite to the right of appeal. [Sec. 2040, 2041 and 2042, R. S. 1909; Mercantile Co. v. Thurmond, 186 Mo. 410, l. c. 428.]

Respondents also seek to dismiss this action. There seems to be no statute specifically defining when

the plaintiff who has been successful in a trial court may dismiss his action.

By section 1980, Revised Statutes 1909, the plaintiff may dismiss his suit in the trial court at any time before it is finally submitted; but not afterwards.

Evidently the same reasons which prompted the enactment of said section 1980 which denies to a plaintiff the right to dismiss his action after he has forced the defendant to go through the whole expense of a trial, apply with greater force to a successful plaintiff who, after an appeal to this court, has forced the defendants to print briefs and send attorneys here to prosecute their appeal.

All parties interested in this action having joined in inducing us to put aside other important work to advance and hear these appeals, and it appearing that the issues tendered affect the validity of important laws of one of the chief cities of our State, and both cases having been carefully briefed and argued by eminent counsel; and it further appearing that if this action and said appeals be dismissed, as now urged by respondents, the same issues may soon be brought before us in another form, we deem it unwise to allow the appeals and submissions in this case and in the Folk case to be dismissed. We will therefore reinstate said appeals and submissions, and proceed to examine and determine the same on their merits.

The Revised Ordinances of Kansas City of the year 1898 placed the employees of the waterworks department in said city under the supervision of the "Board of Public Works." That board prior to the year 1908 appointed as employees in said waterworks department: P. C. Folk, chief clerk; John F. Anderson, superintendent for meter division; A. G. Slaughter, off-and-on clerk; H. E. Behan, permit clerk, superintendent's department; Robert F. Shreve, clerk to auditor, who for convenience will hereafter be designated in this opinion, as "the old employees."

By the adoption of the new charter of Kansas City in 1908, the management of the municipal water-works owned by said city passed under control of a board designated as the "Board of Fire and Water Commissioners," but it is contended by the respondents that the old employees (P. C. Folk et al.) were retained in their respective positions indefinitely by and under the provisions of section 1176 of the Revised Ordinances of Kansas City of 1898, and were not by the new charter placed in the competitive class of the classified civil service of the city. Said section 1176, Revised Ordinances of 1898, is as follows:

"That thereafter no person shall be appointed, employed or discharged in any branch of the water-works service, for or on account of political considerations. That the board of public works and the assessor and collector of water rates each in respect to the employees in their respective branches of the water works service, shall have the right to suspend and discharge employees under their control and direction, for cause only; and this right shall be exercised only in the following manner, that is to say: An employee who has heretofore or shall hereafter serve for such length of time as to determine his efficiency and fitness for any given place, which period is hereby limited to six months, may be suspended by said board and said assessor and collector respectively, for cause; but the board or collector making such suspension shall immediately furnish to the employee suspended a statement in writing of the cause or causes for such suspension, and he shall in all cases be entitled to a hearing before being discharged. If upon such hearing, if and when demanded by such employee, the charges be sustained, then such employee shall be discharged and his pay shall cease from the date of such suspension; but if such charges are not sustained, then no deduction shall be made from his salary on account of such suspension. Such hearing shall be had before

a commission consisting of the mayor, the city coun-selor and the president of the upper house; provided, that in case the suspended officer or employee is an employee of the board of public works, then the speaker of the lower house shall be a member of such commission, and the president of the upper house shall not constitute a member thereof. Said commis-sion shall hear and determine the justness of such suspension without delay, and if said suspended em-ployee shall fail to file with the mayor or other mem-ber of such commission within twenty-four hours after being served with a statement of the reasons of such suspension, a copy thereof, than he shall be deemed to have acquiesced in such suspension, and such suspension shall operate as a discharge of such employee; provided, that this section shall not apply to employees who are or may be employed by the day, and provided, further, that this section shall not apply to employees who have not served six months."

On the other hand, it is contended by appellants that by section 18, article 15, of said charter of 1908 said old employees in the waterworks department were only continued in their respective positions un-til the beginning of the fiscal year of 1910, when their positions became vacant, and passed into the competi-tive class of the classified civil service of the city.

Said section 18, article 15, of the new charter is as follows:

"The incumbents of all positions at the time this charter takes effect coming within the competitive class of the classified service, may continue in service and discharge the duties assigned them until the be-ginning of the fiscal year 1910, and until the board secures an eligible list and promulgates rules as pro-vided in section 3 of this article, whereupon said in-cumbents shall be deemed to have vacated their sev-eral positions. Until such time appointments and re-

movals shall be made and vacancies filled as elsewhere provided in this charter."

Pursuant to said article 15 of the new charter, the mayor appointed three citizens of Kansas City as civil service commissioners; and those commissioners, after due notice, appointed a place and date for holding competitive examinations of persons who desired to apply for employment in the service of said city. At the time and place designated by the board, L. M. Luth applied for the position of chief clerk, water meter department, then held by P. C. Folk; Donald R. Wheelock applied for the position of superintendent of water meter division, then held by John F. Anderson; Cornelius C. Dolan applied for the position of off-and-on clerk, then held by A. G. Slaughter; E. G. Brown applied for the position of permit clerk, superintendent's department, then held by H. G. Behan; and Thomas H. Mitchell applied for the position of clerk to the auditor, then held by Robert F. Shreve.

After passing an examination by said board of civil service commissioners, pursuant to rules adopted by it, said L. M. Luth. was on March 22, 1911, appointed to the position held by P. C. Folk; Donald R. Wheelock was on June 1, 1911, appointed to the position held by John F. Anderson; Cornelius C. Dolan was appointed to the position held by A. G. Slaughter, E. C. Brown was appointed to the position held by H. G. Behan, and Thomas H. Mitchell was appointed to the position held by Robert F. Shreve.

It appears by the record that the old employees (Folk et al.) were unwilling to surrender the offices to which their successors had been appointed; and although the officers of Kansas City paid the salaries of the newly selected appointees (Luth et al.), the old employees remained about their employment, and refused to vacate the respective positions theretofore held by them.

On or about July 21, 1911, the said P. C. Folk, John F. Anderson, A. G. Slaughter, H. G. Behan and Robert F. Shreve, together with certain other employees of the waterworks department appointed before the adoption of the new charter, instituted an injunction suit against Kansas City and against certain officers thereof, to-wit: E. C. Merservey, John H. Thacher, and J. W. Peters, constituting the board of civil service commissioners; David L. White, assessor and collector of water rates; and John P. Tillhoff, E. I. Farnsworth, and George C. Hale, members of the board of fire and water commissioners of said city; and Gus Pierson, comptroller of said city, for the purpose of restraining said officers from appointing or attempting to appoint any person or persons to the positions held by said old employees, or from doing any act affecting the positions or compensation of said old employees in the waterworks department of said city.

Such proceedings were had in said action that on January 17, 1912, the circuit court of Kansas City rendered a judgment awarding to plaintiffs the relief sought by them; and from that judgment defendants in said action prosecuted an appeal to this court. [Folk et al. v. Kansas City, *post,* page 553.]

On or about the 21st day of July, 1911, the plaintiffs in this action, Robert L. Gregory and others, as taxpayers of Kansas City, instituted the present action, praying the circuit court to enjoin the officers of said city from paying any salary or compensation to L. M. Luth, Donald G. Wheelock, E. G. Brown, Thos. H. Mitchell and Cornelius C. Dolan, who were then claiming to be filling positions in the waterworks department of Kansas City, pursuant to appointments under the provisions of the classified civil service of said city; and who for convenience will hereafter be designated as the new employees.

Such proceedings were had in said last mentioned suit that on January 17, 1912, a final decree was entered in said action, enjoining Kansas City and its officers from issuing any warrants to or paying any salaries or other compensation of said new employees; from which said judgment appeals were prosecuted to this court.

The learned trial judge from the phraseology of his decree in both cases appears to have been of the opinion that article 15 of the new charter of Kansas City did not repeal section 1176 of the Revised Ordinances of said city of the year 1898, and that the old employees (P. C. Folk et al.) were entitled to hold the positions to which they had been appointed, notwithstanding the adoption of the new charter and the examination, certification and appointment of the new employees (Luth et al.) under the civil service provisions of said charter.

I.   To sustain the judgment of the trial court, the respondents insist that section 1176, Revised Ordinances of Kansas City of the year 1908, is not repealed by the new charter of said city, for the reason that said new charter does not expressly repeal said section 1176, supra, and there is not in said new charter or the law under which it was adopted, anything to indicate an intention to repeal said section of said ordinances.   Respondents cite:   State v. Walbridge, 119 Mo. l. c. 389; State v. Wells, 210 Mo. 620; Railroad v. Shambaugh, 106 Mo. 557; State v. Hodges, 214 Mo. 376; State v. Jaeger, 63 Mo. 403; State v. Bishop, 41 Mo. 16, and McVey v. McVey, 51 Mo. 406, and many other cases, all of which sustain the well-settled principle of law that courts do not favor repeals by implication, and will not adjudge a former law repealed by implication, unless the new statute is so repugnant to the old that the two cannot be reconciled—unless it clearly appears that the latter statute would not have

been enacted without a clear intent to repeal the former.

In further support of their contention that section 1176, supra, was not repealed, respondents call our attention to section 9712, Revised Statutes 1909, and the following repealing clause of said new charter adopted in 1908:

"All ordinances and parts of ordinances of a general nature not herein contained, except the building code and any ordinances affecting the building code, are hereby repealed; but in construing this provision no ordinance granting any right or privilege therein mentioned to individuals, firms or corporations, or fixing the salary, wages or compensation, or authorizing the appointment or employment, of any officer or employee of the city, shall be held to be a general ordinance; nor shall any ordinance approved since the 14th day of July, 1909, be repealed or in any way affected by any of the provisions of this ordinance."

Section 18, article 15, of the new charter of Kansas City has an express provision that: "The incumbents of all positions at the time this charter takes effect, coming within the competitive class of the classified service, may continue in service and discharge the duties assigned them until the beginning of the fiscal year 1910, and until the board secures an eligible list and promulgates rules as provided in section 3 of this article, *whereupon said incumbents shall be deemed to have vacated their several positions.*"

From the phraseology of this section there seems to be no reason for doubting the intention of the framers of such new charter to vacate all positions then held by employees of the city whose positions came within the "competitive class of the classified civil service." So that to determine respondents' first contention it is only necessary to ascertain whether or not the positions held by the old employees (Folk et al.) in the waterworks department, were really

placed by said new charter in the competitive class of the classified civil service.

Sections 3 and 4 of said article 15 of the new charter expressly name the officers and employees who shall be exempt from the operation of the civil service provisions of said charter. Among the employees thus designated as exempt from the civil service are the members of the board of fire and -water commissioners, and their chief secretary. But no other employees of said board are so designated.

Sections 5 and 6 of said article 15 of the new charter define the positions which are placed under said civil service rules as follows:

"Sec. 5. The classified service shall comprise all officers and positions in the city service not specifically designated in the exempt service, and shall be arranged in two classes to be designated respectively as the competitive class and labor class.

"Sec. 6. The competitive class shall include all positions now existing or hereafter created of whatever function, designation or compensation in each and every branch of the civil service of the city, except such positions as are in the exempt service or in the labor class."

Section 8, article 15, of said charter defines the labor class of such employees as follows:

"Sec. 8. The labor class shall include unskilled laborers and such skilled laborers as may be so classified by the rules and regulations of the commission."

The foregoing provisions seem to place beyond all doubt the fact that the positions held by the old employees (Folk et al.) are placed under the competitive class of the classified civil service. They are so definite as to leave no room for any other reasonable conclusion.

It is urged by respondents that because the fire and water departments were placed under the control of one board (fire and water commissioners) and the

employees of the fire department were by section 13, article 11, of the new charter continued in the respective positions they then held "without further or additional employment," this indicates a legislative intent to also exempt from the classified civil service the employees of the waterworks department. This contention is unsound. The provisions of the new charter just quoted which provide for retaining the employees of the fire department indefinitely, so far as it indicates any legislative intent at all, betokens a design to place the waterworks employees on a different footing from the employees of the fire department as to the tenure of their positions. *Expressio unius est exclusio alterius.* [Taylor v. Pullen, 152 Mo. 434, 1. c. 438.]

The repealing clause of the new charter hereinbefore set out is not indicative of a design to leave in force section 1176 of the Revised Ordinances of 1908, because it does not deal with the tenure of office or right to discharge any employee. We think said repealing clause leaves the point in issue untouched and unaffected in any manner.

While it is true that section 1176, Revised Ordinances of Kansas City for 1898, contains some of the principles of elements of civil service, it applies those principles in a very restricted and modified form. It contains no provision for competitive examinations of applicants for public positions, which competitive examinations are the very heart and purpose of all real civil service laws. [28 Cyc. 416.]

Section 10, article 15, of said new charter, like section 1176 of the Revised Ordinances of 1898, expressly prohibits the removal, reduction in grade of salary or transfer of any employee because of political or religious belief or opinions; in fact, said charter amplifies and extends those civil service rules contained in section 1176, supra, and applies them to all persons employed by the city. It does not stop at

244 Mo. Sup.—35

employees of the waterworks department. It expressly protects appointees in the competitive class of the civil service by requiring notice of their intended removal and the reasons therefor, as well as other safeguards for their protection; but the charter conflicts with section 1176, supra, in that it does not permit the discharged employees to be reinstated by a trial conducted by certain officers of the city.

The charter is a little vague, but seems to provide that before any civil service employee shall be discharged, the cause for which he is to be removed shall be investigated by the person authorized to discharge him, and the reason for his removal designated in the notice which the employee must receive before he can be discharged.

This at least implies that said officer having the right to discharge a civil service employee must not discharge him capriciously, but must first ascertain and designate the reason for his action. And the charter further provides that where a civil service employee is discharged without cause, the officer making such wrongful discharge shall himself be removed from office.

The new charter covers the whole subject of civil service, even detailing how positions held by persons who have not successfully passed a competitive examination (like the old employees, Folk et al.) shall be vacated and refilled by persons who have satisfactorily passed such examinations.

Therefore, upon the familiar rule of construction that a statute is impliedly repealed by a subsequent one revising the whole subject-matter of the first, we hold that said section 1176, Revised Ordinances of 1898, was repealed by the adoption of the new charter of 1908. [State v. Roller, 77 Mo. 120; State v. Crane, 202 Mo. 54, l. c. 80; State ex rel. v. Shields, 230 Mo. 91, l. c. 101-2; Gumm v. Jones, 115 Mo. App. 597; District of Columbia v. Hutton, 143 U. S. 18.]

Said section 1176, Revised Ordinances of Kansas City, is also repealed because it conflicts with the new charter by providing for a reinstatement of discharged employees, which provision is omitted from said new charter. [Quinette v. City of St. Louis, 76 Mo. 402.]

It is manifest that the old employees of the waterworks department correctly understood that provision of the new charter adopted in 1908 which placed them in the competitive class of the classified civil service, because nearly all of such old employees became applicants for the positions they had theretofore held and submitted to an examination before the civil service commissioners, before their successors, the new employees, were appointed in 1910. The new charter was liberal to the old employees in giving them two years additional employment, and time to prepare for the competitive examinations.

II. Respondents further assert that the old employees (P. C. Folk et al.), having been appointed or retained as employees of the city under the provisions of said section 1176 of the Revised Ordinances of 1898, acquired such contractual relations with the city that they could not be removed or their offices or positions vacated by the adoption of a new charter. In support of this last proposition, they cite the following cases:

Springfield Railway Company v. City of Springfield, 85 Mo. 674, which holds that the acceptance of and acting upon a city ordinance by a railroad company is a contract which cannot be abrogated by the enactment of a subsequent ordinance.

State ex rel. v. Kent, City Auditor, 98 Mo. App. 281, which holds that an ordinance prohibiting employees of a city from assigning their wages or salary is a valid provision of said ordinance, and enters into their contract of employment as effectually as if written into the contract.

Boothe v. City of Fulton, 85 Mo. App. 16, which holds that a defendant city, as owner and operator of an electric light and water plant, is subject to all liabilities that would attach at common law were it a natural person, and is liable for damages from overflow water, etc.

Also, the case of Howsmon v. Trenton Water Company, 119 Mo. 304, l. c. 313, which holds that a waterworks company is not liable to a taxpaying citizen of a city for failure to comply with its contract with such city to supply water to extinguish fires.

Respondents also cite section 9710, R. S. 1909, which contains the following provision: "Nor shall such charter be in any wise so construed as to affect any right or liability acquired or accrued under the previous charter by or on the part of any city, or any person or any body corporate."

The statute and cases cited do not sustain respondent's second contention. Section 9710, Revised Statutes 1909, does not purport to reserve to any officer or appointee of a city the right to the office held by him at the time such city amends its charter, or substitutes a new charter for an older one.

Not only have the respondents failed to cite any law which sustains their second contention, but there is an overwhelming array of authorities, both State and federal, which support the doctrine that no one can acquire a vested right in an office or position created by the legislative department of the nation or of a State or municipality thereof. In discussing this very point, WAGNER, J., speaking for the Missouri Supreme Court in the early case of State ex rel. v. Davis, 44 Mo. 129, said: "The whole doctrine upon which the case is placed for the plaintiff is without support. It proceeds upon the theory that a person in the possession of a public office created by the Legislature has a vested interest, a private right of property in it. This is not true of offices of this descrip-

tion in this country; they are held neither by grant nor contract. A mere legislative office is always subject to be controlled, modified or repealed by the body creating It. In England, offices are considered incorporeal hereditaments, grantable by the crown, and a subject of vested or private interests. Not so in the American States; they are not held by grant or contract, nor has any person a private property or vested interest in them, and they are therefore liable to such modifications and changes as the law-making power may deem it advisable to enact."

In the case of City of Hoboken v. Gear, 27 N. J. L. 265, it was said: "This is a case of first impression in this court and so far as I am aware without a precedent anywhere. None was referred to on the argument and my researches have not enabled me to find one. I know of no principle or authority to sustain it. The appointment of a public officer for a definite term with a fixed salary bears no analogy to a private contract between individuals for service. The private contract is purely voluntary. Both parties are bound by its stipulations. The employer can neither alter the time or mode of payment, nor vary the service to be rendered, nor abridge the time of service. The employed cannot abandon the service. Each is liable to the other for breach of contract on failure to perform. But an appointment to a public office during a term of years, and the acceptance of such office, is not a contract between the government and an individual that the officer will serve or that the government will pay during that period. The acceptance may not be a matter of choice but of compulsion; and where the acceptance is voluntary, the officer is not bound to serve during the term. He may remove from the State or resign, or otherwise determine his official relation without a violation of contract. . . . And on the other hand the government may abolish the office and thereby terminate the service without a violation

of contract. So, in the absence of constitutional restriction, the compensation or salary of public officers may be diminished or their duties increased or the mode of remuneration be changed during their continuance in office, without any infringement or violation of contract. An appointment to a public office, therefore, either by government or by a municipal corporation under a law fixing the compensation and the term of its continuance, is neither a contract between the public and the officer that the service shall continue during the designated term nor that the salary shall not be changed during the term of office. It is at most a contract that while the party continues to perform the duties of the office he shall receive the compensation which may from time to time be provided by law. . . . An appointment to a public office is not a contract within that clause of the Constitution which forbids the State Legislature to pass any law impairing the obligation of contracts."

In the case above quoted the plaintiff was a policeman, suing for wages.

The doctrine announced in the two cases last cited, is sustained by the following additional authorities: Butler v. Pennsylvania, 51 U. S. 402; People v. Brown, 83 Ill. 95, 1. c. 97; Crenshaw v. United States, 134 U. S. 99; Mial v. Ellington, 134 N. C. 131.

It is needless to multiply authorities in support of a proposition everywhere recognized to be sound and nowhere disputed. This point is also ruled against respondents.

III. Respondents also assail the constitutionality of the civil service provisions of the new charter of Kansas City, on the ground that the said charter delegates legislative powers to the board of civil service commissioners therein provided for, citing article 9, section 17, Constitution of Missouri, which provides

that cities adopting special charters must have a mayor and "two houses of legislation."

The power granted to the civil service commissioners to prepare and promulgate rules for conducting the examination of applicants for appointment in the competitive class of the classified civil service of Kansas City does not confer upon said civil service commissioners legislative powers.

The right of legislative bodies (or the people) to confer authority upon executive boards to prescribe rules for putting in force the powers and duties conferred upon such boards is fully recognized in the following cases: State v. Hathaway, 115 Mo. 36, l. c. 47; State v. Doerring, 194 Mo. 398; Opinion of the Justices, 138 Mass. 601; The People v. Kipley, 171 Ill. 44; State ex rel. v. Frear, 146 Wis. 291; People v. Chicago, 234 Ill. 416.

IV. In a late brief filed in this case on behalf of Kansas City and persons now holding the chief offices therein, it is urged that: "It is still a mooted question in the field of civil service legislation whether or not it is best or wise to prescribe that persons holding positions cannot be discharged except for cause and after hearing, or should be subject to discharge at the will of the party in power under prescribed liability for abuse in the exercise of such power, and this is the sole and only question left open for controversy under the judgments rendered in the circuit court in these causes. . . . The city would be left, as we submit it should be, to decide for itself the 'nonjudicial,' political question of the wisdom or lack of wisdom of enforcing the civil service requirements in one way or another."

It is also asserted in said brief that the present chief officers of Kansas City, who were "selected by the people by a majority vote of more than 5000, ought

to make the decision as to the course the city should take in this matter."

If learned counsel intend by the foregoing statements to assert the doctrine that it is within the discretion of the executive officers of Kansas City to set aside its charter and administer the affairs of that city pursuant to ordinances which have been repealed, we do not agree with him.

The admitted 5000 majority received by the chief executive of Kansas City in the recent election was no doubt a deserved compliment to his well-known ability, integrity and numerous other good qualities; however, even that large vote did not even tend to repeal any valid charter provisions or ordinances in force at the time of his election.

As we have seen, a repeal by implication may sometimes take place; but the presumption can never be indulged that the voters of a city intended to repeal a law by electing men who were or who turn out to be unfriendly to its enforcement. Laws cannot be repealed in that way.

Of the wisdom or impracticability of those provisions of the new charter which place many of the appointees of Kansas City upon a competitive civil service basis, it is not for us nor for any executive officer to decide. [Henry et al. v. Evans, 97 Mo. 47, l. c. 55.]

It is no doubt a great inconvenience to those employees of the city who have followed a certain line of work for many years to be displaced and forced into some other avocation; but the people of Kansas City in adopting its new charter have in a constitutional manner brought about that result; and we are powerless to grant relief against their sovereign judgment as expressed at the polls.

All officers, both State and municipal, are charged with the duty of obeying such written laws as have been enacted to govern their official conduct, and it is

not within the power even of this court to suspend or set aside any constitutionally enacted statute. [Ex parte Creacy, Petitioner, decided at this term, and reported in 243 Mo. 679.]

The appellants Luth, Wheelock, Brown, Mitchell and Dolan, having established a clear title to the positions to which they were severally certified and appointed, the trial court committed error in enjoining Kansas City and its officers from paying their salaries. Its judgment will, therefore, be reversed, and the plaintiffs' petition for injunction dismissed. It is so ordered.