## Fagan v. McNamee, Fire Commissioner

*Lemuel B. Schofield* and *Marvin Comisky*, for plaintiff.

*Abraham L. Freedman*, for defendant.

OLIVER, P. J., May 22, 1953.—Plaintiff, Earl F. Fagan, is presently employed as a hoseman in the Fire Department of the City of Philadelphia. He was first appointed to that office on August 1, 1930, and served actively and continuously in that capacity until August of 1949.

From August of 1949 until February of 1953, plaintiff was on leave of absence from what is now called the fire department, pursuant to the terms of an ordinance of the City of Philadelphia dated August 18, 1949, which provided generally for a leave of absence without pay, for any duly elected official of the Firemen's Pension Fund, during his term of office.

The Firemen's Pension Fund is a nonprofit corporation separate and distinct from the Fire Department of the City of Philadelphia and from any board or commission of the municipal government. It was incorporated by decree of the Court of Common Pleas No. 1 of this county in 1891. It is privately operated and its function is to provide and administer a pension system for firemen in the Fire Department of the City of Philadelphia.

Plaintiff was first elected to office as assistant secretary of the pension fund in April of 1946. He was next elected in January of 1947 for a full one-year term, and was thereafter reëlected each succeeding year.

Following his reëlection to office, in January 7, 1953, plaintiff requested the fire commissioner to renew his leave of absence from the fire department. This request was refused by the fire commissioner on the authority of Formal Opinion 58 of the city solicitor,

which held that the ordinance of August 18, 1949, had been superseded by the Home Rule Charter and the civil service regulations adopted thereunder. Thereafter, on February 3, 1953, plaintiff filed his complaint in mandamus asking that the fire commissioner be ordered to approve plaintiff's request for leave of absence under the ordinance of August 18, 1949. Defendant, Frank L. McNamee, fire commissioner, filed preliminary objections to plaintiff's complaint, in the nature of a demurrer, and the issue has been joined on the basis of the questions of law involved. .

Although numerous side issues have been raised by both plaintiff and defendant, the basic issue in the instant case is the present status of the ordinance of August 18, 1949. Before taking up this question, however, it is well to consider whether or not the above ordinance, assuming for the moment its present validity, provides the basis for a peremptory writ. The provisions of the ordinance are clearly mandatory. They provide:

"That any employee of the Bureau of Fire (now the Fire Department, . . . duly elected as officer or designated as agent of the Firemen's Pension Fund, shall, upon written application, . . . receive a leave of absence without pay and without loss of seniority rights for and during his period as such officer or agent of said Pension Fund."

The usage of the word "shall' precludes any exercise of discretion on the part of the official in charge of the fire department (formerly the director of public safety, now the fire commissioner) and mandamus therefor lies in the event he fails to act in accordance with the provisions of the ordinance: Commonwealth ex rel. Kelley v. Pommer et al., 330 Pa. 421 (1938).

Defendant has not seriously argued that his duties under the ordinance were discretionary, but rather contends that the ordinance itself is invalid; first, be-

cause it allegedly violated the civil service provisions of the Charter of 1919 and was therefore invalid when made, and, secondly, because it has been superseded by the provisions of the Home Rule City Charter.

Until the institution of the present action, the validity of the ordinance of August 18, 1949, had never been questioned. Its mandate had always been obeyed by the director of public safety, and when his office was abolished, by Fire Commissioner McNamee, instant defendant. Defendant is not obliged, however, to compound past error and he may now question city council's power to adopt the ordinance. The fire commissioner has charged that the ordinance discriminates in favor of the officials of one pension fund in disregard of the officials of any other pension fund. Concededly, the ordinance treats of only the Firemen's Fund, but that fact does not of itself render the ordinance discriminatory. The various pension funds, providing for the welfare of the city's employes are separate and distinct entities, differing from one another in administrative methods and general organic structure. It is conceivable that only the Firemen's Pension Fund requires the full time services of its officers to carry on its business. The above is of course conjectural. However, the fatal flaw in this argument of the fire commissioner is his failure to show that the ordinance is discriminatory as to himself. While his contention might find acceptance if voiced by an official of either the Police or Municipal Pension Funds, he cannot predicate his objection on the ground that the ordinance may be unreasonable as to others: Palumbo Appeal, 166 Pa. Superior Ct. 557 (1950).

It is further claimed that the ordinance of August 18, 1949, interfered with the powers of the civil service commission as it was constituted under the 1919 Charter, the organic law of the City of Philadelphia prior to the effective date of the Home Rule City Charter.

The Charter of 1919 vested in the civil service commission the power to govern all appointments, transfers, reinstatements, promotions, reductions, suspensions, removals, and dismissals, in the civil service of Philadelphia: Act of June 25, 1919, P. L. 581, Art. XIX, sec. 1; 53 PS §3321. While the above powers, vested in the commission were broad, they were in no sense definitive. They were held not to be so comprehensive as to preclude the director of public safety from demoting a captain of police (McCoach v. Philadelphia, 273 Pa. 317 (1922)), or from imposing a reasonable fine upon a police officer: Witkin v. City of Philadelphia, 110 Pa. Superior Ct. 489 (1933).

The City Charter of 1919 also created the city council, which was vested with the power to make all such ordinances "not inconsistent with or restrained by the Constitution and laws of this Commonwealth as may be expedient or necessary for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government, safety and welfare of the city and its trade, commerce, manufactures; and the exercising of full and complete powers for local self-government in matters of police, and the same to alter, modify and repeal at pleasure": Act of March 25, 1929, P. L. 66, sec. 1, 53 PS §3451.

Although the ordinance of August 18, 1949, covered certain members of the classified service, it cannot definitely be stated that it thereby interfered with the powers of the old civil service commission. While impliedly the commission may have had the power to regulate leaves of absence, such power was not expressly delegated to that body. It therefore appears that, in view of the broad ordinance-making powers vested in city council, the ordinance of August 18, 1949, was legally and validly enacted.

However, although the ordinance of August 18, 1949, was validly made, its validity ceased on January 7,

1952, the effective date of the Home Rule Charter. While the ordinance has not specifically been repealed, it is inconsistent and in conflict with the provisions of the Home Rule Charter relating to civil service, and has therefore been superseded: Home Rule Charter, sec. 11-101, page 165.

In contrast to the Charter of 1919, with its vague, indefinite grant of powers to the earlier civil service commission, the Home Rule Charter provides for a comprehensive system of personnel administration, with control unified and centralized in the personnel director, who is empowered to "prepare, and after their adoption, administer the civil service program under the civil service regulations."

As stated in the annotations to section 7-401, the above regulations provide the framework of the entire civil service system and, because of their importance, their content has been outlined in detail. Section 7-401 lists all of the incidents of employment, to be covered by the regulations. Pay plans, classifications, examinations, promotions, appointments, suspensions, dismissals, hours of work, holidays, attendance regulations, as well as special leaves of absence, are all included therein.

The conclusion is inescapable that the framers of the charter did not contemplate a piecemeal revision of the civil service system. The old system was abolished rather than improved, and an entirely new system was erected in its stead. The keynote of this new system is unification under a single administrative authority. With only two exceptions (veterans' job preference and residence qualifications) the personnel director has the exclusive authority to prepare all regulations governing the civil service system. An ordinance which in any way relates to the administration of personnel, excepting ordinances relating to veterans' job preference and residence requirements, in-

terferes with and is in derogation of the powers vested by the charter in the personnel director and is therefore invalid: Home Rule Charter, Secs. 7-400 and 7-401; Gregory et al v. Kansas City, 244 Mo. 523, 149 S. W. 466, 470 (1912); First National Bank of Biddeford v. Pittsburgh, F. W. & C. Ry. Co., 31 F. Supp. 381 (E. D. Pa. 1939).

It is obvious that the ordinance of August 18, 1949, falls within the prohibited category. Although the ordinance applies to officers and agents of a pension fund, its mandate is directed, not to any board of pensions or pension commission, but to the administrative head of the fire department. Nothing is contained within the ordinance which affects, other than indirectly, the internal administration and autonomy of the Firemen's Pension Fund. The ordinance treats of special leaves of absence for civil service personnel, a field of administration now specifically delegated to the personnel director: Home Rule Charter, sec. 7-401($r$).

Special leaves of absence are, as their name implies, special. Their purpose is to provide a certain degree of flexibility to an otherwise rigid system. It is therefore essential to the maintenance of a uniform and coördinated civil service system that regulation of such leaves be vested in the central administrative authority. Heretofore, the personnel director has seen fit, in only two instances, to make it mandatory upon department heads, such as the fire commissioner, to grant special leaves. Union representatives and employes called to jury duty are entitled, upon request, to a leave of absence without pay: Civil Service Regulations of January 7, 1952, no. 20, secs. 6 and 7. Any extension of the right to special leaves by an authority other than the personnel director would be an infringement upon his powers and would therefore conflict and be inconsistent with the provisions of the Home Rule Charter.

It therefore follows that the ordinance of August 18, 1949, is invalid and provides no basis for a writ of mandamus. Preliminary objections to plaintiff's complaint are sustained and the complaint dismissed.