[Civ. No. 15522. Second Dist., Div. Three. Oct. 8, 1946.]

DAVID H. CAMPBELL et al., Appellants, v. BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

[Civ. No. 15523. Second Dist., Div. Three. Oct. 8, 1946.]

HARRY REININK, Appellant, v. BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

Arthur R. Hemm and C. M. Kilpatrick for Appellants.

Cecil L. Whitehead and Samuel D. Robbins as amici curiae on behalf of Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and George William Adams and John F. Feldmeier, Deputies City Attorney, for Respondents.

SHINN, J.—We have before us consolidated appeals by the respective plaintiffs in two actions which they brought against the Board of Civil Service Commissioners of the city of Los Angeles, and others, in which they sought declaratory relief.

In one action David H. Campbell sued for himself, and on behalf of others similarly situated, to establish their status as permanent civil service employees under action theretofore taken appointing them policemen of the city of Los Angeles and declaring that the defendants have no right to discharge them except for cause, under article IX of the city charter. The judgment in the Campbell case declared: "That plaintiff, and each of said others, are war emergency policemen, under and by virtue of the provisions of Ordinance No. 88,110 of the City of Los Angeles, and that plaintiff's employment, and the employment of all others similarly situated, may be terminated at any time by the head of the Police Department or by the Board of Civil Service Commissioners of the City of Los Angeles."

Plaintiff was appointed November 16, 1943, and continuously thereafter has been employed by the city as a war emergency policeman, and the others in whose behalf the action was brought have been and are serving under like appointments.

The question whether the appointments of the parties plaintiff, which were only temporary at the time they were made, have become regular or permanent, by reason of the continued service of plaintiffs as emergency policemen, requires a consideration of the charter provisions and ordinances relating

to temporary appointments, and also the charter provisions which set forth the procedure for regular or permanent appointment in the classified civil service.

Section 109, article IX of the charter provides for temporary appointments in the classified civil service as follows: ". . . To prevent the stoppage of public business, or to meet extraordinary exigencies, the head of any department, or any officer or board, may under such regulations as the board may by its rules prescribe, make temporary appointments in the classified civil service, to remain in force not exceeding sixty days and only until regular appointments, under the provisions of this article, can be made."

The general procedure for entering the civil service through legal channels is set out in sections 100 et seq. of the charter, and section 100 provides that no appointment shall be made except under and according to the prescribed procedure. That provides for public competitive examinations, open to all citizens of the United States, which examinations shall be under the control of the board of civil service commissioners; that applicants having a general average standing in the examinations, for each class, not less than the minimum fixed by rules of the board, take rank as candidates for appointment in the order of their determined relative excellence; that successful candidates are placed upon the register of eligibles and upon notification of the board by the head of a department are certified to the number of not less than three who stand highest on the register; that the position for which they are qualified must be filled from the names so certified; that the candidate thus appointed is thereby employed on probation for a period fixed by the rules of the board, not exceeding six months; that at or before the expiration of the period of probation, the head of the department or office in which the candidate is employed may discharge him upon assigning in writing the reasons therefor to said board, and that if he is not thus discharged during the period of probation, his appointment shall be deemed complete.

In November, 1942, the city council adopted ordinance No. 87,140, making provision for temporary appointments in the city service in the emergency caused by the war. It recited that there existed in the city government a local emergency, due to enlistment of city employees in the armed forces and their employment in war industries, that the man power shortage rendered it difficult and at times impossible to secure

sufficient employees through civil service channels, and that the functioning of the city government was thereby vitally affected. It recited that it was frequently impossible to establish regular eligible lists within 60 days after temporary appointments were made, and it provided that whenever at the expiration of 60 days after the head of a department had filled a vacant position in the classified service by temporary appointment, there was no appropriate civil service list from which certification could be made, and the position could not be filled in any other manner provided by the charter or the rules of the civil service commission, the head of the department might continue such temporary appointment in effect longer than 60 days, but only until a regular appointment could be made under the provisions of article IX of the charter. The ordinance also provided that the board might at any time withdraw its approval and terminate any temporary appointment after it had been in effect for more than 60 days, and might apply the provisions of the ordinance retroactively to cases where the 60-day period of employment had expired prior to the effective date of the ordinance. Section 6 read: "This ordinance shall continue in force and effect for the duration of the war and six months thereafter unless sooner repealed." It was declared to be and was passed as an emergency ordinance to take effect at once.

Ordinance No. 87,140 was repealed by ordinance No. 88,110, adopted January 4, 1944, which covered the same ground, but more fully. Sections 2, 3 and 6 provided as follows:

"Sec. 2. Whenever, because of the war emergency, there is no appropriate civil service list from which certification for employment in any position in the classified civil service can be made under the provisions of Article IX of the city charter, and the position cannot be filled by regular civil service appointment, the head of a department may make a 'War Emergency Appointment' subject to approval by the Board of Civil Service Commissioners, to remain in force only until a regular civil service appointment can be made but not exceeding six months after the date on which existing hostilities shall have ceased between the United States and the nations of Germany, Italy and Japan as fixed by proclamation of the President of the United States or resolution of the Congress. Any employment authorized under the provisions of this ordinance is subject to termination at any time by the head of the department or by the Board of Civil Service Commissioners.

"Sec. 3. All persons employed pursuant to this ordinance, shall be known as 'War Emergency Employees' and shall be so designated on all records or documents relating to their employment or compensation. No such person shall acquire any civil service or other permanent status because of such employment.

" Sec. 6. Ordinance No. 87,140, approved November 6, 1942, relating to temporary employment of personnel, is hereby repealed; provided, however, that any appointment heretofore made pursuant to the provisions of Sec. 109 of the charter and thereafter duly extended or continued in effect longer than a period of sixty (60) days by order and approval of the Board of Civil Service Commissioners pursuant to said Ordinance No. 87,140, shall be valid as a 'War Emergency Appointment' and continued in effect subject to the provisions of this ordinance.''

Plaintiff's temporary appointment, being one authorized by the charter and by Ordinance No. 87,140 and having been extended and continued in effect longer than the original 60 days by order and approval of the board of civil service commissioners, was and is a valid ''war emergency appointment'' under the provisions of Ordinance No. 88,110. While plaintiff alleged in his complaint that he is a war emergency policeman, he also alleged that he was appointed in the manner provided by section 100 of the charter for the appointment of candidates in the civil service; that by virtue of his appointment he became a probationary employee, that he served the period of probation of six months and was not discharged, and he contends that he thereby automatically became a permanent employee in the department under the provisions of said section 109. The procedure that was followed in the making of the so-called war emergency appointments was the following:

Plaintiff and other applicants were interviewed by the police department, and those who were passed preliminarily upon interview were given a perfunctory mental test and, if they passed that, a medical examination, surviving which, they were directed to appear for the next two weeks' course of instruction at the police academy. The police department provided, for the mental test, what was known as the ''Otis Quick Scoring Mental Ability Test,'' under which the applicant was given 80 questions to answer; 32 correct answers would give him a passing I. Q. of 90, out of a possible 138. The two weeks' course at the police academy was arrangèd and super-

vised by the police department and dealt with the basic rules and regulations of the department and the duties of its members. On November 16, 1943, plaintiff was sworn in as a police officer and his pay commenced. This was on the first day of his instruction at the police academy. At that time he received a circular from the police department, stating that his appointment would be temporary, that it was improbable that anyone over 30 who received a war emergency appointment as policeman would be eligible to take the next civil service examination and that the appointment on a temporary basis would not assure him of permanent appointment under civil service nor the possibility of being blanketed into the service. Plaintiff signed a statement to the effect that he had read the information sheet, understood that the board of police commissioners might terminate his employment at any time and that, upon the establishment of a civil service eligibility list, authority for his continued employment would cease and terminate.

It appeared from the evidence that plaintiff took no examination in which he competed against other applicants, was given no ranking in accordance with his determined excellence, and was not placed upon an eligible list or certified for appointment in accordance with the procedure outlined in section 100 of the charter. The tests and the instruction which he took were not intended to be a substitute for those which pertained to the regular civil service procedure. His examination was not competitive except in the sense that he was endeavoring to and did receive a passing I. Q. rating of 90 out of a possible 138. His appointment depended only upon his passing the medical examination and receiving a passing grade in the mental ability test.

The methods prescribed by charter for the making of appointments in the civil service are mandatory and controlling. (*Campbell* v. *City of Los Angeles,* 47 Cal.App.2d 310, 313 [117 P.2d 901]; *Heard* v. *Board of Administration etc. of City of Los Angeles,* 39 Cal.App.2d 685, 695, 698 [104 P.2d 47]; *Pinion* v. *State Personnel Board,* 29 Cal.App.2d 314, 317, 319 [84 P.2d 185]; *Nash* v. *City of Los Angeles,* 78 Cal.App. 516, 519, 520 [248 P. 689].) No power reposed in the city council, the board of civil service commissioners or the police department to adopt methods of appointment different from those prescribed by the charter, nor could the essentials of the charter requirements have been dispensed

with by ordinance. But there was no attempt to dispense with them. It was the inability to fill positions through the regular civil service channels which brought about the scheme of war emergency appointments. ██ Plaintiff accepted such an appointment well understanding that it was temporary, only, and that his continued service would not result in his appointment becoming permanent. But he contends that it was not within the power of the city council to thus continue his temporary employment, for the reason that it was limited by the charter to 60 days. We understand his argument to be that the ordinance, insofar as it gave a fixed and continuing temporary status to his employment, was in conflict with the charter and void, and that when the period of 60 days, as limited by the charter, had expired he became a probationary employee and, at the expiration of six months of service, a permanent employee, subject to discharge only for cause. We are unable to agree with this contention. In the first place, while the charter provides for the making of temporary appointments to positions within the classified civil service, such appointments are in reality only temporary expedients preliminary to the positions being filled through the established procedure. The appointments do not make the appointees qualified civil service employees or members of the civil service system, which can be entered only through successful competitive examination, certification and appointment. The ordinances only relieved the board and the head of the police department from making successive appointments of 60 days each until examinations could be held and eligible lists created in accordance with the civil service provisions of the charter. We find no conflict between the ordinances and those provisions, but as we consider plaintiff's argument we cannot see how it leads to the conclusion that invalidity of the ordinance would bring about a change in the temporary character of his employment. Had it not been for the continuation, under the ordinance, of his employment beyond the original 60-day period, his status as an employee, instead of being a permanent one, would have been without a legal basis and would have terminated 60 days after it was made.

We find no support for the claim that plaintiff has been appointed or has acquired a status in the classified civil service other than as a temporary employee whose appointment may be terminated at any time.

The second action was instituted by Harry Reinink on be-

half of himself and others similarly situated. His situation differs from that of Mr. Campbell only in the respect that he was appointed subsequent to January 5, 1944, when Ordinance No. 88,110 was adopted. The methods followed in determining his qualifications were substantially the same as those in the Campbell case and he received a similar course of training. He, also, contends that his appointment became permanent because he performed the duties of a policeman for more than six months and had not been discharged therefrom at the time of trial. The conclusions of the court were the same as in the Campbell case; Mr. Reinink and those on whose behalf he sued were declared to be subject to discharge at any time by the board of civil service commissioners or the head of the police department. Civil service examinations have only recently been held and an eligible list has been established, but the parties plaintiff are claiming no rights thereunder.

We are in full accord with the conclusion of the trial court, and the judgments in the two cases should be and are affirmed.

Desmond, P. J., and Kincaid, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 5, 1946.