People of State of Illinois ex rel. John Caslin, Appellee, v. Joseph P. Geary, Inspector of Weights and Measures et al., Appellants.

Gen. No. 43,716.

Opinion filed December 31, 1946.  Released for publication January 15, 1947.

BARNET HODES, Corporation Counsel, for appellants; J. HERZL SEGAL, Head of Appeals and Review Division, FRED V. MAGUIRE, CARL H. LUNDQUIST and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

MICHAEL F. RYAN, of Chicago, for appellee; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff filed a mandamus proceeding in the superior court to compel his certification and appointment to the civil service position of deputy inspector in the department of weights and measures in the City of Chicago.  The case was heard by the court on complaint, answer, replication and the testimony of witnesses, and judgment was entered in favor of plaintiff that the writ of mandamus issue.  Defendants appeal.

There is substantially no dispute as to the essential facts, which disclose that in June 1941 a civil service examination was held for the position of deputy inspector of weights and measures.  When the eligible list created by this examination was posted on June 28, 1943, it contained 26 names, among which the name of John Caslin appeared as No. 20.  Subsequent to the posting of the list and prior to June 8, 1945, the date on which this proceeding was tried, 14 certifications and appointments were made from that list, and an examination of the pay-roll record introduced in evi-

dence shows that 13 persons on the eligible list ahead of plaintiff were certified and appointed to the position of deputy inspector of weights and measures, and were then performing their duties as such and receiving the salary appropriated therefor. Exhibits introduced in evidence also show that one Theodore Heller, No. 23 on the eligible list, had been certified and appointed, and was performing his duties as deputy inspector and receiving his salary therefor. The reason for Heller's appointment to his position in place of plaintiff's does not appear of record. Of the 19 persons on the eligible list ahead of plaintiff, only six were not appointed and working at the time of the hearing. Three of these waived certification because of military service, one filed a waiver because he was "frozen" in a position in a defense plant, and one was on an extended leave of absence. As to Raymond J. Fahey, who appeared as No. 19 on the eligible list, there had been no certification, but the evidence disclosed that at the time of hearing he was in the military service, and prior thereto had worked as a temporary employee in the department of weights and measures.

The evidence at the hearing further disclosed that five temporary employees whose names, dates of appointment and other pertinent data follow, occupied positions as deputy inspectors of weights and measures: (1) Florence Blackwood, appointed January 17, 1939 as a temporary deputy inspector, took the examination and failed to pass; (2) Rose Clarke, appointed December 2, 1935 as a temporary deputy inspector, worked continuously from that date to June 8, 1945, when this cause was heard; (3) Kathleen Fahey, appointed December 29, 1942, is the wife of Raymond J. Fahey, whose name appeared as No. 19 on the eligible list and who had worked as a temporary employee prior to his entry into the military service; she supplanted him after he joined the armed forces; (4)

Halda Scanlon, appointed March 22, 1943, is the wife of Robert E. Scanlon, who was No. 7 on the eligible list and who had worked as a temporary employee prior to his entry into the military service; and (5) Delmar J. Hilt, appointed December 12, 1941, filled the position of James J. Hennessy while he was on leave of absence. It thus appears without dispute that at the time defendants filed their answer on March 29, 1945 Raymond J. Fahey was No. 1 and the plaintiff John Caslin was No. 2 on the eligible list; that at the time of the trial Russell McDonald, who was No. 10 on the original eligible list and who had waived three previous certifications because he had been "frozen" in a position in a defense plant, was No. 1, Fahey was No. 2 and Caslin was No. 3; that at the date of the hearing and for a long time prior thereto, Fahey had been in the military service and consequently would have been unable to accept certification for appointment, and that Florence Blackwood, one of the former temporary deputy inspectors, had failed to pass the examination, but was nevertheless retained in such position from January 1939 to the date of the trial.

The inspector of weights and measures did not notify the civil service commission of the vacancies in the position of deputy inspector to be filled by certification from the eligible register existing therefor, nor did he make any formal requisition in which he specified the sex of persons to be certified. The evidence shows that he made the temporary appointments which the civil service commission approved, although regular appointments could have been made.

The sole points urged as ground for reversal are that the trial court erred in directing the writ of mandamus to issue because (a) plaintiff had failed to show a clear legal right to the writ, and (b) the issuance of the writ would create confusion, public inconvenience and embarrassment in the conduct of public business. With respect to the first proposition, de-

fendants argue that the inspector had the power to designate the sex of the deputy required to perform the duties of his office; that there being no women on the eligible list, he was within his right in appointing women as temporary employees to fill the position of deputy inspectors; that only one male temporary employee was employed; and that plaintiff was not entitled to his position because he was not No. 1 on the eligible list. Their counsel argue that the inspector employed women as deputy inspectors to perform work known as "shopping" in retail grocery stores, butcher shops and bakeries, tasks which a woman is much better qualified to perform, as they say, than is a man, without arousing the suspicions of the shopkeeper, and that a woman is in a better position from constant shopping experience to detect frauds and short weights in such places. However, the duties of the position of deputy inspector as set forth in defendants' brief indicate that they involve much more than merely shopping in stores, and there was no proof adduced upon the hearing to indicate that the work done by the women appointees was any different from that done by male deputy inspectors; in fact, their duties were the same. The best indication of the fallacy of defendants' argument is that in their own brief they admit that two of the women, temporary appointees, were holding the position for their husbands who had joined the armed forces. Evidently the inspector intended to re-employ these men in the jobs held by their wives. In view of his contention that the women were holding jobs for their husbands who were temporarily absent in the armed forces, it is difficult to reconcile his refusal to appoint male employees from the civil service list because the duties of the position required the services of women.

Defendants rely on a quotation from *People ex rel. Arden v. Gallagher*, 144 N. Y. Supp. 900, wherein the court pointed out that "the immutable difference in

the ability to do certain kinds of work between men and women must be given due consideration. Whether or not such differences apply to any particular occupation depends upon the nature of the duties to be performed, and the determination as to this rests, in the first instance, at least, with the civil service commission and the appointing power. Certainly, unless it appears, as it does not appear in this case, that this discretion has been abused, no right has been violated. . . ." That decision does not aid defendants because the court there clearly held that the civil service commission must in the first instance determine who can best fill a particular job, and that the commission was within its rights in creating separate lists of men and women. It does not hold, nor are any of the cases cited by defendants authority for the proposition, that the inspector may by-pass eligibles on the list for temporary appointees upon the theory that those of the opposite sex are better qualified to fill the position.

An analysis of the provisions of the act regulating civil service in cities (Ill. Rev. Stat. 1945, ch. 24½, par. 39 *et seq.* [Jones Ill. Stats. Ann. 23.040, *et seq.*]) demonstrates that the so-called temporary appointments were in violation of the statute and in derogation of plaintiff's rights. Section 3 commands the civil service commissioners to classify all offices and places of employment in the city affected with reference to examinations, and provides that no appointments shall be made to such offices and places except in accordance with the rules. Section 4 authorizes the commission to make rules to carry out the purposes of the Act and for examinations, appointments and removals in accordance with the provisions of the statute. Section 6 requires examinations to be held for all offices or places in the classified service, and gives to the commission control of these examinations. Section 8 provides for the preparation of eligible reg-

isters of persons who pass the examination, and specifies that such persons shall rank upon the register in the order of their relative excellence as determined by the examination. Section 10 deals with the manner of making appointments to the classified service. It provides that the head of the department or office in which a position classified under the Act is to be filled, shall notify the commission of that fact, and the commission shall certify to the appointing officer the name and address of the candidate standing highest upon the register for the class or grade to which said position belongs. "In making such certification, sex shall be disregarded, except when some statute, the rules of said commission, or the appointing power specifies sex." A consideration of these statutory provisions indicates that it was the intention of the State legislature to make the civil service commission the personnel agency entrusted with the duty of providing qualified personnel for the public service, and to this end it was given power to conduct examinations, prepare eligible lists and make rules to carry out the purposes of the Act. The statute necessarily took from the department heads the arbitrary power to make appointments; under the statute they must fill the positions under their jurisdiction with personnel certified to them by the civil service commission. We think these fundamental concepts of civil service, as expressed by the legislature, furnish ample reason for disapproval of the course employed in this proceeding. To hold that the appointing officer has the right to make temporary appointments when there is none of the sex he designates on an eligible list, would throw open the door to abuse and circumvention of the Civil Service Act, the fundamental purpose of which is to improve the public service. The foundation principle of the Act is that appointments to municipal offices or employments must be made according to merit and fitness to be ascertained by competitive examinations.

*People v. Kipley,* 171 Ill. 44. In the instant proceeding the construction urged by defendants would allow the appointing officer to retain indefinitely persons not proved fit by examination, or even those who had proved themselves unfit by reason of their failure to pass the examination, and such a construction would do · violence to the fundamental purpose of civil service.

The remaining contention is that mandamus should not issue because it would cause confusion and embarrassment in the conduct of public business. Plaintiff clearly demonstrated on the hearing that he is No. 3 on the eligible list and available for certification. He showed the existence of five vacancies filled by temporary employees over a two-year period. The argument that the issuance of the writ would create confusion, public inconvenience and embarrassment is predicated upon the fact that certain of the eligibles had waived certification because they were in the armed forces or could not be released from their work for the duration of the war. It is said that upon their discharge from the armed forces they would be entitled to certification to any vacancies then existing, and if plaintiff were appointed, then upon returning from service they would lose their right to certification ahead of him. It should be noted, however, that on March 19, 1945, after plaintiff had filed his complaint, Walter Kolody, No. 18 on the eligible list, was appointed deputy inspector after certification by the civil service commission, and defendants fail to explain how confusion could result from Caslin's appointment when it did not result from Kolody's appointment, even though there were four eligibles ahead of Kolody who had waived certification due to military service or defense work. Moreover, provisions exist for the protection of veterans' rights in matters of this kind. Section 4 of rule 4 of the rules of the civil service commission provide that veterans

are to be put on a special military eligible list and are to be certified to any available vacancy after the expiration of their service, even though in the meantime the eligible list is exhausted or canceled, and in addition thereto section 10½ of the civil service statute gives preference to veterans for appointments and promotions in the classified service.

In the light of what has been said we are of the opinion that the facts in this proceeding show a violation of the civil service law which has deprived plaintiff of his right to a position to which he should have been appointed long ago. Therefore the judgment of the trial court in directing the issuance of the writ is affirmed.

*Judgment Affirmed.*

SCANLAN, J., concurs.
SULLIVAN, P. J., took no part.