## Elliott v. City of Covington.

May 20, 1947.

R. G. Bryson and J. P. Goodenough, Judges.

Northcutt & Northcutt for appellant.

John L. Cushing for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Thomas Elliott, appellant, a discharged employee of City of Covington, appellee, sued for restoration of his job and for salary accrual during the time of his separation from such job. The chancery court having denied appellant any relief, Elliott now prosecutes this appeal.

The question of this case was and now is whether Elliott had acquired such civil service status in working for the City of Covington as to inhibit his arbitrary dismissal from service thereafter.

In 1938, legislative enactment of this state provided a civil service law enabling cities of the second class, the group to which Covington belongs, to set up a civil service plan and a pension fund for municipal employees. That law provided, inter alia, that any city of such group might elect to operate under civil service by adopting a civil service, municipal ordinance; that such an ordinance should create a civil service commission, one of the duties of which would be to hold advertised, competitive examinations for applicants for municipal jobs within the employment covered by the ordinance; that the mayor of such a city should, with the approval of the city's legislative body, appoint three persons, with specified qualifications and with designated terms of office and with salaries to be fixed by the city's legislative body, to act as such civil service commission. The civil service law further provided that such cities might

waive the provisions of the law relative to creation of civil service commissions and vest the civil service functions in their city managers. See Sec. 3235h-2, Carroll's Ky. Statutes.

After the passage of the 1938 civil service, enabling law, Covington adopted, also in the year 1938, an ordinance setting up a civil service plan and a pension fund for its municipal employees. Covington has a city manager form of government, and so its civil service ordinance was made to provide as follows: "The city manager shall prescribe and propound such examinations as he may deem proper, commensurate with vacant positions within the various departments of the city, according to the classifications hereinafter set out, and shall set such times and places for holding said examinations as may be fit and proper, etc. * * *"

On June 10, 1940, Elliott applied to Covington's city manager for a job as maintenance man in the city's water department. It appears that the city manager employed Elliott perfunctorily and without examination; that Elliott thereafter worked until February 17, 1944, when he was dismissed without preferment of any charge against him; that he was dismissed at a time when one or more other municipal employees, with less seniority rights than himself, were retained in service; that he had, during the period of more than three and one-half years of his employment, regularly paid into the city's pension fund out of his wages the monthly amounts required under the plan set up by the city ordinance.

Under these circumstances, Elliott made the contention that he had acquired a civil service status with the city which could not have been legally disturbed by the city's action in dismissing him arbitrarily from his job in the year 1944. But the city made the contention that Elliott had never legally acquired civil service status, since he took no civil service, competitive, advertised examination, as provided by statutory law and by municipal ordinance.

The chancery court upheld the contention of the city and adjudged that Elliott, never having taken any civil service examination, acquired no civil service status in his municipal employment.

We have reached the conclusion that the chancery court's judgment was correct and free from error. Appellant admits that he did not take the civil service examination. Therefore, he could not have acquired civil sevice status.

It is true that the civil service law provides that whenever a city adopts an ordinance under such law and accepts pension plan wage deductions from city employees, an inviolable contract shall be created between city and employees so as to maintain a continuing relationship of employment thereafter, subject to be broken only in the manner mentioned by the law itself. However, we firmly believe that this provision of the law is predicated upon a lawful inception of the civil service employee relationship in its very beginning. Now appellant's original employment was admittedly not wrapped in the swaddling clothes of civil service legality in infancy. Accordingly, we can conceive of no way in which appellant's employment could have developed into the full grown maturity of civil service status in its later years. If the employees of a city operating under civil service law could be hired without examination and then permitted to acquire civil service status simply by monetary payments, this method would no doubt be widely practiced and the net result would be equivalent to the selling of civil service status for the price of wage deductions. Thus the entire civil service plan would degenerate into a delusion and a mockery, into the selling of a legal birthright for a pecuniary mess of pottage.

Wherefore, having found no error in this case, the judgment is now hereby affirmed.