Oscar HOLCOMBE et al., Appellants,

v.

Abe LEVY, Appellee.

No. 13072.

Court of Civil Appeals of Texas.

Galveston.

March 7, 1957.

Rehearing Denied April 11, 1957.

508

Geo. D. Neal, City Atty., and Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellants.

Hofheinz, Sears, James & Burns, Houston, and Will Sears, Houston, of counsel, for appellee.

GANNON, Justice.

This is a mandamus suit brought by Abe Levy as plaintiff against the City of Houston, its Mayor, Oscar Holcombe, its Comptroller, Roy B. Oakes, its Treasurer, Henry Kriegel, its Civil Service Commission and

the members thereof, Wallace P. Kelly, alleged to be the judge of the "Corporation Court" of the City of Houston, and Walter S. Hart. The relief prayed for is a declaratory judgment establishing: (a) that plaintiff is the lawful holder of the office of Judge of the Corporation Court No. 2 of the City of Houston, (b) that certain actions of the Mayor and City Council in attempting to remove plaintiff from his position as such officer were illegal and void, (c) that plaintiff is an officer and appointee of the City of Houston entitled to civil service protection under the provisions of Article Va of the city's charter, and (d) that plaintiff is entitled to the salary appertaining to the office from and after the date of his attempted removal which he claims to be void and without legal effect. By other prayers plaintiff sought mandamus and injunction against the city, its officers, and Walter Hart, alleged to be by attempted, but void, appointment an unlawful pretender to plaintiff's claimed office, so as effectively to restore plaintiff to the office of Judge of the Corporation Court No. 2 of the City of Houston and to ensure the payment of salary, past and present.

All defendants appeared and answered, pleading to the jurisdiction based on the claim that the Civil Service Commission of the City of Houston was vested by law with exclusive and final jurisdiction to hear and determine plaintiff's complaints if, as claimed, he was an employee protected by civil service, and that in any event plaintiff had not exhausted his "administrative remedies." Defendants also pleaded numerous special exceptions not material in the state of the record before us, a general denial, and a special denial that plaintiff was unlawfully or wrongfully removed from office. Defendants affirmatively pled plaintiff's legal and proper removal from office by the defendant Mayor and City Council, and that the defendant Hart had been duly and legally appointed to the position of Judge of the Corporation Court No. 2 of the City of

Houston formerly held by plaintiff, and that defendant Hart who had legally qualified for office was the duly and legally appointed judge of that court.

Before the trial court heard the special exceptions of defendants and before a regular trial on the merits, plaintiff, pursuant to Rule 166–A, Texas Rules of Civil Procedure, filed a motion for summary judgment. After notice, this was heard on the pleadings and on supporting affidavits and counter-affidavits, including sworn or certified copies of public records. At the conclusion of the hearing, the court sustained the motion, finding that no genuine fact issue existed and that the plaintiff Levy was entitled to summary judgment, which followed in due course. The judgment commanded the performance of all acts necessary to restore plaintiff to the position of judge of the Corporation Court No. 2 of the City of Houston and as well the performance of all acts necessary to ensure the payment of plaintiff's salary of office accrued and to accrue. Further, the judgment enjoined defendant Mayor from in any way attempting to oust plaintiff from his office "except under and by virtue of the power of suspension vested in him * * * in strict accordance with the civil service provisions of the charter of the City of Houston and the civil service rules promulgated thereunder." By further provisions of the judgment, defendant Hart was enjoined from any further claim of right to the disputed office. Pursuant to the prayer for declaratory relief, the trial court's decree adjudged (a) that plaintiff was the lawful holder of the contested office, (b) that the defendant Holcombe's attempted removal of the defendant from office was void as was the attempted confirmation thereof by the City Council, (c) that plaintiff was an officer and appointee of the defendant city entitled to civil service protection under Article Va of the city's charter, and that as a holder of such office he could not be removed or suspended without just cause, such removal or suspension, if any, to be accomplished "in

accordance with the strict provisions of Section 3 of Article Va and Section 7a of Article VI of the City's charter." The judgment bears a notation of the exception and notice of appeal of defendants, given in open court and declares the defendants exempt "from cost or supersedeas bond." Execution of the judgment is stayed pending appeal. The record was timely filed and an appeal has been duly prosecuted by all defendants.

In their brief defendants assign nine formal points of error, raising, among others, two points to be hereinafter discussed which, in our opinion, are decisive of the appeal and require a reversal of the trial court's judgment. Succinctly stated, these points are: (a) the contested office is not protected by the civil service provisions of the charter of the City of Houston, civil service rules adopted thereunder, or any other civil service provisions of law, (b) even though the contested office be one potentially within the purview of the civil service provisions of the charter of the City of Houston and civil service rules adopted thereunder, still plaintiff, since he has never qualified as a "classified" civil servant through "open, competitive and free examination as to the fitness in regard to classified services" of the City of Houston, is not protected as a classified civil service employee.

The following unfortunately, but necessarily, long statement is essential to an understanding of the material facts and governing law:

Houston is a home rule city. After the effective date of Chapter 269, page 493, of the Acts of 1949, 51st Leg., carried as Article 1200c in Vernon's Ann.Tex.Civ. St., the City of Houston, as authorized by said legislation, adopted an ordinance availing itself of the provisions of Art. 1200c and creating three corporation courts for the trial of misdemeanor and certain other offenses. The courts were designated as (1) Corporation Court, (2) Corporation Court No. 2, and (3) Corporation Court No. 3. By the same ordinance the City created three offices of judge or recorder, one for each of the courts created by the ordinance. A monthly salary range of from $500 to $700 was fixed for the office of judge of the Corporation Court. A monthly salary range of from $400 to $600 was fixed for the office of judge of the other two courts. There was provision that within the several salary ranges the salaries of the judges should be fixed by the Mayor from time to time. The ordinance further enacted pursuant to Art. 1200c express power in the Mayor to appoint an additional judge for any of the courts from time to time as demanded, and additional offices to provide for such appointments. The ordinance adopted provisions for the transfer of cases and exchange of benches permitted by Section 3 of Art. 1200c, and provided for the office of clerk of the courts. It repealed all ordinances in conflict to the extent of the conflict. However, neither by the ordinance nor, so far as the record shows, by any other action has the governing body of Houston prescribed "the qualifications of the persons to be eligible to appointment as recorder of said court or courts." Art. 1200c authorizes the Mayor of any city availing itself of its provisions, with the confirmation of the governing body, to appoint the judges of Corporation Courts created pursuant to the power conferred by the Act on cities such as Houston.

Article II, Section 13 of the charter of the City of Houston provides for a court for the trial of misdemeanor offenses, known as the "Corporation Court," with the powers and duties defined in the Corporation Courts Act and any acts amendatory thereof. However, neither said court nor the office of judge thereof, as contemplated by the charter, is in controversy in this litigation, which is limited to the office of Judge of the Corporation Court No. 2.

It appears from the record that on April 22, 1953, then Mayor Roy Hofheinz appointed plaintiff, Mr. Abe Levy, as Judge of Corporation Court No. 2, effective April

22, 1953, and that such appointment was duly confirmed by the Council on the same day. The resolution or confirmation was approved by the Mayor on April 23, 1953.

So far as the record shows, Mr. Levy's first contact with the City of Houston material to this controversy was his "application for employment with the City of Houston" dated April 23, 1953, the day following his appointment to the contested office and the confirmation of the appointment by the City Council. The application refers to no particular position with the city. It sets out Mr. Levy's educational background, record of military service, his engagement in the practice of law for twenty-four years next preceding the date of the application, and the names of certain personal and business references. In order that the City of Houston may be informed as to Mr. Levy's "personal character and qualifications for employment" Mr. Levy by the application refers to all who may have information concerning him and authorizes their full disclosure of all pertinent information. On the day Mr. Levy filed his application for employment, the secretary of the Civil Service Commission certified him as eligible for employment.

Following his appointment, its confirmation by the governing body, and his application for employment with the city, Mr. Levy entered upon the discharge of the duties of the office of Judge of the Corporation Court No. 2 at a monthly salary of $600. This has since been somewhat increased. He continued in the office and as judge of the court until Monday, February 20, 1956, when he was verbally "dismissed and removed" from the office by Mayor Hofheinz' successor, then and now Mayor O. F. Holcombe. On February 22, 1956, Mr. Walter S. Hart was appointed by the Mayor as Judge of the Corporation Court No. 2 as successor to Judge Levy at a salary of $650 per month. Presumably that appointment was confirmed by the Council. On the same day, pursuant to Mayor Holcombe's written request of date February 22, 1956, the Council passed a motion or resolution confirming and ratifying Judge Levy's dismissal and removal from office.

Subsequent to these events all efforts of plaintiff Levy to exercise the duties and prerogatives of judge of the Corporation Court No. 2 have been successfully defeated by the City of Houston and the defendants Hart and Wallace P. Kelly, the latter being the presiding judge of the Corporation Court.

By a Home Rule Amendment of 1913 the defendant City of Houston adopted present Article Va of its charter, known as the Civil Service Amendment. The Civil Service Amendment itself was amended in 1915. As amended, Article Va presently reads as follows:

### "Civil Service

"Section 1. Commission, Creation of— There is hereby established a Civil Service Commission, which shall consist of three persons, resident citizens of the City of Houston, who shall have resided in said city for a period of more than three years, and one of whom shall be a member of the City Council, and all of whom shall be over the age of 25 years. Immediately after this amendment goes into effect, or as soon thereafter as practicable, and every two years thereafter, the Mayor shall appoint and the City Council confirm such commissioners, and they shall serve without compensation; their term of office shall be for two years, or until their successors are appointed and qualified. Any vacancy in said Commission caused by death, resignation or otherwise shall be filled by the Mayor and confirmed by the Council for the unexpired term of such retiring Commissioner.

"Sec. 2. Rules and Powers of Commission—The Civil Service Commission, with the approval of the City Council, shall make such rules and regulations for the proper conduct of its business as it shall find necessary and expedient; but all rules made by the commission may be changed

or amended by the City Council; provided, that no rules or regulations shall ever be adopted which will permit the appointment or employment of persons without good character or unfit and incompetent to discharge the duties thereof or prevent the removal or discharge of any appointee or employee for want of fitness, moral character, or competency, or the failure or refusal to properly discharge the duties of his appointment or employment.

"The Civil Service Commission, among other things, shall provide for the classification of all employees eligible to civil service, except day laborers, and of all officers and appointees, including peace officers and firemen, except the heads of departments now existing or which may be hereafter created by the City Council, and the officers and appointees hereinafter named: The City Attorney and his assistants; City Tax Attorney, if there shall be one; City Engineer; Tax Assessor and Collector; Chief of Police; Chief of Fire Department; Fire Marshal; Purchasing Agent; City Health Officer; City Pathologist; City Scavenger; and all of the chief clerks of any and all departments of the city government, and the members of all the boards created and appointed by the Council shall not be subject to civil service rule; provided, however, that the naming of particular departments and the heads thereof as hereinbefore given shall not be exclusive of other departments that now exist, or that may be hereafter created by the Council, and no head of any department, nor his chief clerk shall be subject to civil service rule. The Civil Service Commission shall also make provision for open, competitive and free examination as to the fitness in regard to classified services for an eligibility list from which vacancies shall be filled, for a period of not less than 12 months probation before being placed upon the classified list of appointees or employees and for promotion on the basis of merit, experience and record.

"Employees of the city who may at the time of the adoption of this Article be in the actual service of the city shall retain their respective positions unless removed by the Mayor and City Council under the provisions of this Charter, until placed on the classified list after having served their probation.

"The City Council may by ordinance confer upon the commission such further and additional rights and duties as may be deemed necessary to enforce and carry out the principles of this Article.

"Sec. 3. Removal of Employees—Any employee may be suspended by the head of the department under which he is employed, and thereupon his salary shall cease. The officer making the order of suspension shall forthwith file with the Civil Service Commission a statement of the suspension and his reasons therefor. Within ten days after such suspension the employee so suspended may, if he desires, file an appeal with the Civil Service Commission, who shall hold an inquiry within ten days thereafter, and said Commission shall make a decision within ten days after the hearing whether the employee shall be permanently dismissed from the service of the city or reinstated in his employment. All such hearings shall be public; the decision of the Commission shall be final. In order for an employee to file an appeal as hereinbefore provided it shall only be necessary for him to file a written statement showing in what department he was employed, when and for what he was suspended and a statement by him denying the truth of the matters charged in the statement of the officer so suspending him, and that he desires an appeal from the decision of said officer suspending him, which statement of appeal shall be signed and sworn to by the employee so suspended. In all hearings on appeal from the order of suspension by the Civil Service Commission, the judgment of the officer suspending the employee shall be presumed to be correct; the burden of disproving the charges made against the

employee that resulted in his removal shall be upon the employee.

"Sec. 4. Commission, Rules and Regulations—The Civil Service Commission, with the approval of the City Council, shall have power at all times to make proper rules and regulations for the government of the employees under Civil Service, and when such rules and regulations have been made it shall cause such rules to be published in some newspaper in the City of Houston; provided, that no rules and regulations shall ever be adopted which will permit the appointment or employment of any person without good character, or unfit and incompetent, or to prevent the removal or discharge of any appointee or employee for want of fitness, moral character or the failure or refusal to properly discharge the duties of his appointment or employment. (As amended, 1915.)

"Sec. 5. That as to all employees, officers and appointees not under civil service the provisions of the present Charter shall remain in full force as to such appointment, removal, salary, services and duties, unless amended at this or some other subsequent election."

Article VI, Section 7a, Subdivision 2, of the charter of the City of Houston relating to the mayoralty office is as follows:

"2. The Mayor shall have power to appoint, subject to confirmation by the City Council, such heads of departments in the administrative service of the City as may be created by ordinance, and the Mayor shall have the power to remove such heads of departments at any time he shall see fit without confirmation by the City Council. The Mayor shall also have the power to appoint and remove all other employees of the City, such appointments and removals to be subject, however, to the civil service provisions of the Charter."

We note here that the word "employee" is used in the charter at times to include and at others to exclude "officers and similar appointees" above the grade of certain lower classes of employees.

While we feel none too secure in the notion, we apprehend that in civil service legislation the terms "classified services" and "classified employees" are used to denote those entitled to security of tenure, promotion, etc., contemplated by civil service legislation as distinguished from unclassified services and unclassified employees, which latter terms we also apprehend are used to denote employees and employments subject to summary unprotected handling. Compare the provisions of the charter of the City of Dallas, quoted in McDonald v. City of Dallas, Tex.Civ.App., 69 S.W.2d 175, Tex.Sup., 98 S.W.2d 167, dividing the civil service of that city into unclassified and classified services and subdividing the classified services into competitive and noncompetitive classes.

For historical background, purposes of comparison, and in order that all applicable legislation may be considered in pari materia, we here direct attention to the Corporation Courts Act of 1899, Article 1194 et seq., R.S.1925, including Article 1196(a), V.A.T.S., enacted in 1949 by the same legislature which enacted Article 1200c, pursuant to which the office here in contest was created.

The Corporation Courts Act of 1899 created for all incorporated cities, towns and villages a court to be known as the Corporation Court, and conferred jurisdiction within the territorial limits of such subdivisions, in criminal cases arising under local ordinances, and, as well, jurisdiction concurrent with the justice courts in the precincts in which the subdivisions were situated, in criminal cases arising under State laws where the punishment is by fine only, not in excess of $200. The Act provided for a judge or recorder of such courts, to be selected in the case of special charter cities under the provisions thereof concerning the election and appointment of judges of such courts, and

further provided that in cities not incorporated under special charter the Mayor should be ex officio recorder of such courts unless the election of a recorder be authorized by ordinance, to hold office for two years, vacancies to be filled by the *governing body* of the municipal subdivisions for unexpired terms only.

Subsequent legislation relating to the creation of corporation courts and to the filling of the office of judge thereof is embodied in Article 1200a, passed in 1939, 1200b, passed in 1947, and 1200c, passed in 1949. However, the old Corporation Courts Act was itself amended in 1949, Article 1196(a), V.A.T.S., to provide that the judge of the "Corporation Court" in Home Rule cities by whatever name such official may be called in the charter of such city *"shall be selected under the provisions of the City Charter concerning the election or appointment of a judge to preside over the Corporation Court."* (Emphasis supplied.) This amendment of the old Corporation Courts Act, providing as it does for the selection of corporation court judges under the provisions of city charters concerning their election or appointment and expressly providing that incumbent judges appointed or elected in accordance with charter provisions, shall hold office until their successors be selected under the provisions of city charters, may very well have been, and probably was, prompted by the 1940 amendment to Article XVI of the Constitution of Texas, Vernon's Ann.St. being Section 30b thereof, reading as follows:

"§ 30b. Civil service offices; duration

"Sec. 30b. Wherever by virtue of Statute or charter provisions appointive offices of any municipality are placed under the terms and provisions of Civil Service and rules are set up governing appointment to and removal __ɔm such offices, the provisions of Article ·16, Section 30, of the Texas Constitution limiting the duration of all offices not fixed by the Constitution to two (2) years shall not apply, but the duration of such offices shall be governed by the provisions of the Civil Service law or charter provisions applicable thereto. Added Nov. 5, 1940."

In any event, Article 1196(a), enacted in 1949 by the same legislature which enacted Article 1200c, under which the contested office involved here is authorized, cogently suggests that the legislature enacting it was conscious of the adoption by many Home Rule Texas cities of civil service amendments. See the emergency clause reciting the existence of "great doubt and confusion as to the legality of the selection of certain" Corporation Court judges. In the light of Article 1196(a) it is significant to our minds that Article 1200c apparently fully and freshly occupies the field of the matter of appointment and confirmation of judges of Corporation Courts created pursuant to its authority, especially when that very Article expressly repeals "all laws and parts of laws in conflict herewith" and expressly provides that the Act "shall supersede any provisions of any special charters of cities which are contrary to the terms hereof." We think the term "special charters" as used in the repeal, Section 5 of Article 1200c, refers to charter provisions adopted pursuant to the Home Rule Amendment as well as to cities specially chartered by enactment of the State Legislature. For that matter, the City of Houston is itself a special charter city, pursuant to grant of the Legislature of 1905, Sp.Laws 1905, c. 17, as amended in that same year, Sp.Laws 1905, c. 46, and later amended in 1911, Sp.Laws 1911, c. 16. Such special charter, however, has been subsequently altered by Home Rule amendments. We, therefore, feel that if in language or in spirit the provisions of Article 1200c conflict in respect to the appointment and confirmation of corporation court judges with special charter provisions, including those for civil service,

then such special charter provisions must yield, as must also the provisions of Article 1196a passed two weeks earlier than Article 1200c.

In removing and discharging plaintiff Levy, Mayor Holcombe evidently feeling that Mr. Levy was not "a civil service employee" protected by Section 3 of the Civil Service Amendment to the city's charter, apparently proceeded under the power of removal of city employees vested in him by Article VI, Sec. 7a of the charter. This power does not appear to be limited in any way in the case of city employees not in the classified service. In this connection the record shows that the city claims that neither it, nor its attorney, nor its civil service commission, has ever considered that plaintiff Levy was a classified employee entitled to the protection of Section 3 of Article Va of the charter. Though at one time one member of the Commission, the defendant Mrs. J. Edwin Smith, took the position that the Commission should investigate Mr. Levy's status under the charter's civil service amendment, still, upon the filing of this suit, she joined with all other defendants in a common front denying any status in plaintiff entitling him to the protective provisions of Section 3, Article Va.

Upon plaintiff's summary removal by the Mayor, the latter entirely omitted filing "with the Civil Service Commission a statement of the suspension and his reasons therefor" either "forthwith" or later.

Seven days after his removal by Mayor Holcombe Mr. Levy filed with the Civil Service Commission a letter reciting the facts in respect to his removal by the Mayor and the action of the presiding judge of the Corporation Court, Judge Kelly, in refusing to permit him to assume the bench. By this letter Mr. Levy claimed to be a civil service officer and appointee subject to removal and discharge only under the procedure provided by Section 3 of Article Va of the charter, and claimed

that he was not subject to summary removal by the Mayor or removal in any form by the Council. The letter recites that the Mayor has failed and refused to "forthwith file with this Honorable Civil Service Commission a statement of suspension and his reasons therefor" and claims that because of such omission he, Mr. Levy, is unable to file an appeal with the Civil Service Commission. The letter specifically requests the Commission "to make and enter its formal order directing" Levy's immediate restoration to office, payment of his salary, and the expungement from the City's records of the appointment of his successor. The letter concludes with a prayer "generally for all relief afforded * * * under the charter of the City of Houston and the Civil Service rules of the City of Houston."

The Civil Service Commission referred Mr. Levy's letter to the City's Legal Department and that Department advised that Mr. Levy's discharge was in accordance with the charter and that the Commission had no jurisdiction over the discharge or any appeal therefrom. The Legal Department advised that Mr. Levy's letter be filed and that no action be taken thereon. The Commission followed this advice. It has never taken, nor does it contemplate taking any action on Mr. Levy's letter.

In his brief plaintiff Levy expressly disavows having taken an appeal on his removal and discharge by the Mayor to the Civil Service Commission, claiming that in view of his status as a protected civil service employee and of the failure of the Mayor to file a statement of his reasons for the suspension, there was nothing to appeal from. In fact, Mr. Levy claims that all action taken by the City and its employees, including the Mayor and Judge Kelly, is void and legally nugatory. This mandamus action, of course, proceeds on the assumption that plaintiff is the incumbent judge of the City's Corporation Court No. 2; that he has never been legally ousted or removed from that office as such and

that he is legally entitled to exercise the duties and prerogatives of the office. This position is countered by the city, which claims that the action of the Mayor in "ousting and removing" plaintiff from office was effective as a legal discharge, rendering it incumbent upon Mr. Levy, even if a protected civil service employee, to appeal from such acts under the provisions of Section 3 of the Civil Service Amendment to the charter, it being the city's position that the only possible basis of jurisdiction in the courts would be a suit to set aside on the grounds of illegality, fraud, or caprice, any order which the Commission might make permanently dismissing Mr. Levy from the service. It is the city's claim that Mr. Levy's only present remedy, if any, is by mandamus to compel the Civil Service Commission to proceed to act on his "appeal" to that body, the city contending that Mr. Levy's letter of February 27, 1956, reciting the facts and praying for general relief, constitutes in fact an appeal from his removal and discharge.

It will be noted that the civil service amendment of the charter makes it mandatory on the Commission to provide for the classification of all employees eligible to civil service, and, as well, to make provision "for open, competitive and free examination" for fitness "in regard to classified services."

Other provisions of the civil service amendment require the Commission, with the approval of the Council, to make rules, regulatory of civil service. This function the Commission has performed, and the record contains the presently existing rules, being those submitted by the Commission of February 9, 1944, and later approved by the Council. Generally speaking, these rules as enjoined by the charter contemplate appointment to the classified protected civil service of the city only after success in "open, competitive and free examination." Rule VI, Section 1, provides: "No person shall be appointed to a position in classified service except as otherwise pro-

vided for by law until he shall have signed a completed application on the form or forms prescribed by the Commission, *has qualified by passing the required examination,* and has been certified for appointment in accordance with these rules."

We have been pointed to no provision of law contemplating appointment to a position in the classified service of the City of Houston other than on the basis of fitness determined by open, competitive and free examination. However the rules, as distinguished from the charter, do provide —Rule VIII, Section 5d—for the appointment to vacancies in a scientific, managerial, professional, or educational class of employment when there is a shortage of applicants upon recommendation by the city manager [mayor] upon satisfactory evidence that the applicant meets the requirements for the class and is qualified otherwise. This rule leaves it to the *discretion of the Commission* whether to require the applicant to pass a written or oral examination, or both, in order "to qualify." It does not occur to us that appointment to scientific, managerial, professional, or educational classes of employment upon mere recommendation of the Mayor upon satisfactory evidence, but without free, open and competitive examination as directed by the charter, necessarily contemplates that the appointee be thereby placed in classified service—that is to say, among those employees protected by the provisions for removal, Section 3, Va, of the charter, or other provisions of the rules enacted under the mandate of the Civil Service Amendment for promotion on the basis of merit, experience, and record.

Mr. Levy has not made it to appear that he qualified for employment with the city and obtained a position in a classified service on the basis of any open, competitive, or free examination. Rather, his presentation suggests that his certification for employment by the Secretary of the Commission resulted from his educational back-

ground and character references, there being a shortage of applicants for the professional position to which he was appointed.

Is the position of Judge of Corporation Court No. 2 of the City of Houston protected by the provisions of Section 3, Va, of the charter?

■ We think this must be answered in the negative. The legislation under which the court and the office of judge thereof were created purports to deal expressly with the matter of appointment. The Act also provides that the qualifications for eligibility to the office may be established by the governing body of the city, though the prescribing of such qualifications is not made prerequisite to a valid appointment. The Act provides, and all it provides, in respect to appointments to the office of judge of courts created under it, is that such appointments shall be made by the Mayor and confirmed by the governing body of the city. The Act expressly confers such power of appointment upon the Mayor and expressly confers the power of confirmation on the governing body. The Act purports to cover, briefly, it is true, but nevertheless fully and completely, the matter of appointments to the office of judge of any corporation court created under the Act, and the power of appointment conferred on the Mayor by the Act is not limited or in any way restricted by anything contained in the Act, except that the appointment must be confirmed by the governing body of the city; otherwise such power is made absolute. Fourteen days before the passage of the Act under which the court was created, the same legislature passed legislation dealing expressly with judges of corporation courts of Home Rule cities, and provided generally speaking that appointments to recorder or judge of said courts should be "under the provisions of the City Charter." No such limitation or direction is found in Article 1200c. The Article expressly deals with the matter of

appointments and confers such power on the Mayor subject only to the confirmation by the governing body. And not only that, Article 1200c expressly repeals all laws and parts of laws in conflict with it "to the extent of such conflict only." It seems to us that the plain content of Section 1 of Article 1200c conferring the absolute power of appointment on the Mayor, untrammeled and unfettered by any other requirement save confirmation by the governing body, conflicts with any provision of a city charter providing for the selection of a judge of corporation courts in any other manner, or from a class of eligibles in any way limited save as to qualifications as may be prescribed by the governing body, and that there is a conflict between the power of appointment conferred on the Mayor by Article 1200c and any supposed requirement of the charter of the City of Houston that such appointment be made only from a certified list, or upon certification of eligibility by its Civil Service Commission. Such a limitation upon the Mayor's power of appointment would add a requirement not contemplated by Article 1200c and in our opinion would conflict with it. Only two weeks earlier than the effective date of Article 1200c—May 27, 1949—and on, to wit: May 13, 1949, there passed into law Article 1196(a) amending the Corporation Courts Act expressly providing for the selection of judges of corporation courts under the provisions of city charters. Such charters may very well provide for elections. Had it been in the mind of the Legislature that any provision of the charter of the City of Houston requiring certification by the Civil Service Commission or, say election, was a condition precedent to the licit enjoyment of the contested office, it is unlikely that the Legislature would have conferred on mayors the absolute and unlimited power of appointment contained in the Act. It would have been an easy matter for the Legislature to have included any such limitation upon the Mayor's power of appointment in the Act, but none appears

there. This absence presents a "negative conflict," as it were, and in view of the repeal by Article 1200c of all laws in conflict therewith, in our opinion, mayors are free thereunder to appoint judges of corporation courts without regard to any civil service or other provisions of municipal charter such as requirements that the office holder be elected, the sole limitation upon the validity of such appointments being confirmation by the city's governing body. We rule that the certification of Mr. Levy's eligibility for the position of judge of Corporation Court No. 2 by the Civil Service Commission Secretary was unnecessary and not required by any extant provision of law, and that it neither added to nor detracted from Mr. Levy's status as a municipal officer of the City of Houston. We further rule that such certification, following as it did by one day the actual appointment and its confirmation, was ineffective for any purpose, and that the office to which Mr. Levy was appointed is not one in the classified civil service of the City of Houston protected by the provisions of Section 3, Va, of the charter, being the Civil Service Amendment. This being true, we further rule that the power of the Mayor conferred by Article VI, Section 7a, Subd. 2, of the charter to remove city employees, was not restricted by any civil service provisions of the charter and that the Mayor's discharge and ouster of Mr. Levy from office on February 20, 1956, constituted a valid, effective, and legal discharge.

Since plaintiff Levy does not claim to have qualified for the classified services of the City of Houston through open, competitive and free examination as to fitness therefor, is he a classified civil service employee protected against summary removal by the Mayor?

The answer to this question requires construction and interpretation of the civil service amendment to the charter of the City of Houston, the language of which is none too explicit. However, the true intent of the people in adopting it must be ascertained and declared.

■■■ There is but one cardinal rule for the construction of laws and that is *intention*. "Intention * * * is the law itself," "the essence of the law" and "the spirit which gives life" to statutes. To construe and interpret is to ascertain and declare intent, not to defeat or thwart it. Intent is first to be derived from a general review of the whole of an enactment and when ascertained to be given effect so as to attain the object and purpose of legislation. The force of this cardinal canon is such that when necessary it authorizes even a departure from the strict letter of the law. Sometimes in such departure the letter is enlarged, sometimes restrained. But laws are always to be construed and interpreted in the light of their object and purpose and the language of an Act is to be taken in such way as will best and most certainly accomplish its fundamental purpose though, of course, without doing violence to plain language. "Thus where a statute is designed to afford a remedy for existing evils, it should be given such significance as will afford a reasonable remedy. Contrariwise, a construction that is repugnant to the object of the law or that will defeat, thwart or unduly limit its plain purpose, will be avoided if possible." 39 Tex.Jur., Sec. 116, p. 219.

Now, bearing the foregoing in mind, there can be little doubt that the plain and sole object and purpose of the civil service amendment to the charter of the City of Houston was to do away with the so-called "spoils system" of appointment to public employment, in order that the city might obtain more competent, better and efficient service from the most qualified personnel available, regardless of political affiliations, inclinations, or the lack of them.

Admittedly the civil service amendment, like many things in Paul, is hard to understand in its details, but its object and purpose are clear and the basic means by which

the voters sought to effect this object and purpose will, on careful and close consideration, we feel, emerge with equal clarity.

Looking to the third paragraph of Section 2 of the amendment, providing that employees in actual service retain their positions unless sooner removed, "until placed on the classified list after having served their probation," it appears reasonably certain that as a condition precedent to protected status the attainment of a position on "the classified list" is contemplated. This is further buttressed by the requirement that the Commission "provide for the classification of all employees eligible to civil service except day laborers and of all officers and appointees." To our minds this indicates that the amendment uses the terms "civil service" and "classified services" interchangeably. The amendment clearly contemplates the existence of unclassified services for employees not "eligible to civil service" such as day laborers. It is inferable that the amendment leaves to the Commission created thereby, subject to approval by the Council, some discretion in respect to what services with the city shall fall in classified departments and what shall fall in unclassified departments.

We come now to what we consider to be the very heart and essence of the civil service amendment; to that which gives it life and meaning and without which it would be but an unimplemented shell without real signification, and but a weak weapon indeed with which to eradicate the evil at which it is aimed. We refer to the mandatory provision of the amendment for open, competitive and free examinations as to fitness; for a probation period before being placed upon the classified list, and for promotion on the basis of merit, experience, and record. We quote, emphasizing the mandatory word "shall": "The civil service commission *shall* also make provision for open, competitive and free examination as to the fitness in regard to classified service, for an eligibility list from which vacancies shall be filled, for a period of not less than twelve months probation before being placed upon the classified list of appointees or employments, and for promotion on the basis of merit, experience, and record."

In the light of the general object and purpose of all civil service legislation and considering the evil to be eradicated thereby, to wit: the spoils system, we find no difficulty in arriving at the basic intent of the foregoing language of the amendment, couched as it is in mandatory terms, i. e., that classified, protected civil service status under it is to be attained only upon the basis of "open, competitive and free examination." As a corollary, those who enter the service of the city on any other basis are on the very language of the civil service amendment itself without status as classified civil service employees. Take out of the Act the provision for open, competitive and free examinations and for the grading of employees thereon and it would appear that the voters in adopting the amendment have accomplished nothing constructive. "The foundation principle [of Civil Service] is that appointments to municipal offices or employments must be made according to merit and fitness to be ascertained by competitive examinations." People ex rel. Caslin v. Geary, 330 Ill.App. 172, 71 N.E.2d 96, 99. Every court and all texts which treat of the subject recognize that the very heart of civil service—its life principle—is competitive examination. It is not necessary to quote from the cases, but see: Elliott v. City of Covington, 304 Ky. 802, 202 S.W.2d 621; State ex rel. Baker v. Wichert, 159 Ohio St. 50, 110 N.E. 2d 771; State ex rel. Lynch v. Taylor, 136 Ohio St. 417, 26 N.E.2d 207; City of Birmingham v. Lee, 254 Ala. 237, 48 So.2d 47; Wolff v. Hodson, 285 N.Y. 197, 33 N.E.2d 90; State ex rel. King v. Harris, Fla, 49 So.2d 803; Larson v. City of Des Moines, 216 Iowa 42, 247 N.W. 38; Campbell v. Board of Civil Service Commissioners of

City of Los Angeles, 76 Cal.App.2d 399, 173 P.2d 58; Healey v. Jones, 152 Pa.Super. 18, 30 A.2d 732; and Gregory v. Kansas City, 244 Mo. 523, 149 S.W. 466.

Either the charter provision for open, competitive and free examinations is meaningful, or it is not. Either it is merely permissive, or mandatory. We do not believe the provision for open, competitive and free examination would have been made a part of the city's fundamental organic law of protected civil service without intent that this particular provision be given effect in any and every instance. True, much is left to the discretion of the Commission. It is allowed to make rules and regulations for the conduct of its business, but it is unthinkable that the amendment contemplates any rule or regulation which would effectively by-pass its organic provisions, and in our opinion any such rule would be void and without effect as a non-permissible one under the charter.

■ Mr. Levy does not contend that he ever took an open, competitive and free examination, nor does he seriously contend that he actually took an examination of any kind. Rather, his position seems to be that the Secretary of the Commission is authorized under Rule VIII, Sec. 5d to certify professional applicants after an examination consisting solely of the Secretary's evaluation of the applicant's training and experience as recorded in his application for employment. We do not doubt that the city has authority to employ on such a certification, but we are equally without doubt that employment on mere application and evaluation of the applicant's qualifications on the basis of the contents of the application even when the applicant is certified by the Secretary of the Commission does not establish the employee as a member of the classified services of the city so as to afford him the protection of Sec. 3 of the civil service amendment.

We need not dwell on the complete inefficacy of the Civil Service Amendment to remedy the evils at which it was aimed if construed as Mr. Levy construes it. That is, as authorizing protected classified civil service status for employees without open, free and competitive examinations. If this plain requirement of the charter can be by-passed in Mr. Levy's case, it can be by-passed with equal ease in others, and civil service becomes but a euphemism for the very spoils system it was designed to prevent. For us to reach a result which would confer classified protected civil service status upon one appointed without open, free, competitive examination would be but to nullify a plain fundamental charter provision of the City of Houston governing civil service and to make the provision for open, free and competitive examinations directory, rather than mandatory. This, in our opinion, would be repugnant to the sole purpose of the amendment.

Many civil service laws, though providing generally for competitive examination, permit appointment to the classified services when examinations are not practical. Some of these were available as models at the date of the adoption of the civil service amendment to the charter of the City of Houston. Nevertheless, the city fathers and the voters saw fit to include no such provision in the Houston charter, and we cannot read into it such a provision in the face of its plain language. The Supreme Court of Errors of Connecticut, in Howe v. Civil Service Commission of City of Bridgeport, 128 Conn. 35, 20 A.2d 397, 399, had before it a civil service law which failed to incorporate in terms a provision that all appointments in the classified service must be made only after competitive examinations. The court said: "While the law does not in terms so state, it does provide that when a position in the classified service shall become vacant the appointing authority, if it shall desire to fill the vacancy, shall proceed in accordance with the terms of the act. There is no question as to the legislative intent that no position in the classified service can be filled except in accordance with those terms, and these require public competitive tests."

We are convinced that the provisions of Sec. 3 of the civil service amendment of the charter of the City of Houston are applicable only to members of the classified service and that under Article VI, Sec. 7a of the charter the Mayor has the authority to remove non-classified employees of the city without regard to the provisions of the civil service amendment. We, therefore, feel that appellee Levy was legally discharged by the Mayor and that he has no right to the relief for which he asks.

We are not impressed with appellee's claim that his appointment without open, competitive and free examination was a mere irregularity and consider inapposite the cases which he cites in support of that position, namely, City of Houston v. Estes, 35 Tex.Civ.App. 99, 79 S.W. 848, and City of Paris v. Cabiness, 44 Tex.Civ.App. 587, 98 S.W. 925.

Had Mr. Levy been a classified civil service employee, we feel, in the light of the result reached in McDonald v. City of Dallas, 98 S.W.2d 167, that his attempted removal by the Mayor without the filing of a statement of the suspension with reasons therefor would have been illegal, so as to entitle him to the remedy of mandamus for restoration to office. But for this Supreme Court decision and on the consideration advanced in Davis v. City of Mount Vernon, 271 Ill.App. 565, and in the light of the language of the civil service amendment itself, we would reach a different result. Our original thinking is that the whole plan of civil service, as shown by the charter amendment which makes the determination of the civil service commission final on discharges, would require that that body first act before the courts intervene in the administrative affairs of the city, especially in a situation such as this where Mr. Levy's letter in which he asked for general relief, was, we think, sufficient to constitute an appeal. In this connection, we have no doubt of Mr. Levy's right, were he able to establish status as a classified civil service employee, to a writ of mandamus, directed to the Civil Service Commission, to hear and

dispose of his case, from which disposition he could appeal to the courts only for fraud, arbitrariness, and caprice.

The judgment of the trial court being on plaintiff's motion for summary judgment is reversed and remanded for further proceedings not inconsistent with this opinion.